Rachel A. Placitella, Esq. (Bar No. 023111982)
RPlacitella@cprlaw.com
COHEN, PLACITELLA & ROTH
127 Maple Ave.
Red Bank, NJ, 07701
Telephone: 732.747.9003
Facsimile: 732.747.9004
http://www.cprlaw.com

Jory D. Lange, Jr., (*Pro Hac Vice Forthcoming*)
jory@jorylange.com
THE LANGE LAW FIRM, PLLC
6300 West Loop South, Suite 350
Houston, TX 77401
Telephone: (833) 330-3663
Facsimile: (833) 393-3663
www.MakeFoodSafe.com

**ATTORNEYS FOR PLAINTIFFS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA SUE GOLDEN, individually in her capacity as the surviving parent of TODD EUGENE SHIRLEY, deceased, as well as in her representative capacity as the Representative of the ESTATE OF TODD EUGENE SHIRLEY; and MARION EUGENE SHIRLEY, individually in his capacity as the surviving parent of TODD EUGENE SHIRLEY, deceased, )<br><br>Plaintiffs, )<br>v. )<br><br>BRACHEL MARKETING, LLC dba LONE GOOSE BAKERY, an Oklahoma Limited Liability Company; BRANDON MCCARTHY, an individual; RACHEL MCCARTHY, an individual; BRACHEL REAL ESTATE, LLC, an Oklahoma Limited Liability Company; 1519 BRACHEL REAL ESTATE, LLC, an Oklahoma Limited Liability Company; RACHEL C. MCCARTHY TRUST, an Oklahoma Trust; | **COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Case No. |

BEDEMCO IMPORT-EXPORT, INC. dba        )
BEDEMCO, INC., a New York Corporation;  )
FUERST DAY LAWSON, INC., a New          )
Jersey   Corporation;   FUERST   DAY    )
LAWSON, LTD, an England Registered      )
Company; JJ NUTS, LLC, a New Jersey     )
Corporation;   UNICORN   INGREDIENTS    )
LIMITED, an England Registered Company,  )
SINCERELY NUTS, Inc. dba SINCERELY      )
NUTS, a New York Corporation, John Doe  )
Corporations   1-10;   and   John   Doe )
Corporations 11-20.                      )
                                         )
      Defendants.                      )

LINDA SUE GOLDEN, individually in her capacity as the surviving parent of TODD

EUGENE SHIRLEY, deceased, as well as in her representative capacity as the Representative of

the ESTATE OF TODD EUGENE SHIRLEY, deceased; and MARION EUGENE SHIRLEY,

individually in his capacity as the surviving parent of TODD EUGENE SHIRLEY, deceased, by

way of Complaint against Defendants, upon information and belief allege as follows:

## I.      INTRODUCTION

1.      As detailed more completely herein, on or about March 6, 2019, Todd Eugene

Shirley ("Todd") purchased unwashed blue poppy seeds, specifically Blue Bird Poppy Seeds, from

Lone Goose Bakery's website, LoneGooseBakery.com. He tracked the express shipping of the

seeds from Lone Goose Bakery's location to his home in Georgia.

2.      Lone Goose Bakery shipped the unwashed Blue Bird Poppy Seeds from Tulsa,

Oklahoma to Todd's home in Dahlonega, Georgia.

3.      Thereafter, Todd used Lone Goose Bakery's unwashed Blue Bird Poppy Seeds to

make and consume Poppy Seed Tea.

4.      Todd was found dead on March 9, 2019. He was 46 years old.

5.      When Todd was found, he had no apparent injuries, and there was no obvious cause of death. Lone Goose Bakery's unwashed Blue Bird Poppy Seeds, however, were found at the scene of his death.

6.      The autopsy report concluded, "The cause of death for Todd Shirley is classified as acute toxicity of drugs including morphine.  Reports of toxicological testing indicated the presence of morphine at a potentially lethal level." "Mr. Shirley had a history of using poppy seed tea containing unwashed poppy seeds.  The toxicology test results are consistent with poppy seed tea representing the source of the morphine.  Mr. Shirley was not known to have access to prescription morphine and was not known to use heroin.  Autopsy revealed no other findings that would be expected to have caused the death."

7.      Morphine was not found in Todd's home, nor was there physical evidence of an illicit or pharmaceutical source of morphine. However, Lone Goose Bakery's Blue Bird Poppy Seeds were found in Todd's home.

8.      The above-captioned defendants knew or should have known that the unwashed poppy seeds sold to Todd contained dangerously high concentrations of opiate alkaloids.

9.      Defendants' actions and omissions, as outlined below, were a proximate, significant, meaningful, and substantial contributing factor in causing Todd Shirley injuries.  Todd Shirley's injuries, and subsequent death, were a direct and proximate result of Defendants' acts and omissions, as outlined below.

## II.      THE PARTIES

### A.      The Plaintiffs

10.     Plaintiff Todd Eugene Shirley, deceased, was a resident and citizen of Lumpkin County, State of Georgia.

11.     Plaintiff Linda Sue Golden is the duly appointed representative of the Estate of Todd Eugene Shirley by order of the Probate Court of Lumpkin County, State of Georgia, dated January 13, 2021.

12.     Plaintiff Linda Sue Golden is a proper statutory beneficiary under Georgia law to bring and assert the present claim for wrongful death.

13.     Plaintiff Marion Eugene Shirley is a resident and citizen of Cobb County, Georgia.

14.     Plaintiff Decedent Todd Eugene Shirley leaves his surviving mother, Linda Sue Golden, and father, Marion Eugene Shirley, who have sustained pecuniary and nonpecuniary injuries resulting from said death.

15.     Plaintiff Linda Sue Golden brings this action:.

    a.     on behalf of herself; and

    b.     as the representative of the Estate of Todd Eugene Shirley.

16.     Plaintiff Marion Eugene Shirley brings this action:

    a.     on behalf of himself.

17.     Plaintiffs assert claims for each of the following types of damages as provided under Georgia law or, pleading in the alternative, New Jersey law:

    a.     Predeath pain and suffering on behalf of the Estate of Todd Eugene Shirley;

    b.     Punitive damages on behalf of the Estate of Todd Eugene Shirley;

    c.     Wrongful death, including the full value of Todd Eugene Shirley's life;

    d.     All damages permitted in a survival action;

    e.     Loss of services;

    f.     Economic loss;

    g.     Noneconomic loss; and

h.   All other damages permitted under Georgia law or, pleading in the alternative, New Jersey law.

18.   The term "plaintiff" should be read to mean Plaintiff Decedent Todd Eugene Shirley, Plaintiff Linda Sue Golden, and/or Plaintiff Marion Eugene Shirley as syntactically correct.

**B.   The Defendants**

19.   Defendants are corporations organized under the laws of the various states of the United States of America and/or individuals that were and are doing business in the State of New Jersey.  The aforementioned Defendants sold, supplied, distributed, and/or marketed the unwashed poppy seeds that caused Todd Eugene Shirley's death.

*1.   The Lone Goose Bakery Defendants*

20.   **Defendant Brachel Marketing, LLC.** At all times relevant hereto, Defendant Brachel Marketing, LLC dba Lone Goose Bakery ("Brachel Marketing"), was a company organized and existing under the laws of the State of Oklahoma with its principal place of business located at 1002 E. 20th Street, Tulsa, OK 74120. Brachel Marketing may be served through its registered agent Christopher L. Carter at 320 S. Boston Avenue, Suite 200, Tulsa, OK 74103 or at its principal place of business at 1002 E. 20th Street, Tulsa, OK 74120.

21.   At all times relevant hereto, Brachel Marketing, LLC dba Lone Goose Bakery was an owner and operator of Lone Goose Bakery, LoneGooseBakery.com, PoppySeedTeaRecipe.com, and their trademarks.

22.   At all times relevant hereto and upon information and belief, Brachel Marketing, LLC was a seller, supplier, distributor, and marketer of food products, specifically unwashed poppy seeds.

23.     Brachel Marketing, LLC dba Lone Goose Bakery, sold, supplied, distributed, and marketed unwashed poppy seeds to customers throughout the United States, including to Georgia and New Jersey.

24.     This Court has specific personal jurisdiction over the Lone Goose Bakery Defendants.  First, Lone Goose Bakery obtained enormous quantities of unwashed poppy seeds from New Jersey.  In a single 13-month period, Lone Goose Bakery purchased 69 1,600 pound pallets of unwashed poppy seeds from New Jersey's JJ Nuts, for which it paid JJ Nuts $1,027,600. Second, throughout Lone Goose Bakery's *entire* history it has obtained *all* of its unwashed poppy seeds from New Jersey, first from New Jersey's Sincerely Nuts, then from New Jersey's JJ Nuts.

25.     **Defendant Brandon McCarthy**. At all times relevant hereto, Defendant Brandon McCarthy was a resident of Tulsa in Tulsa County, Oklahoma.  Defendant Brandon McCarthy currently resides at and may be served at 1002 E. 20th Street, Tulsa, OK 74120.

26.     Defendant Brandon McCarthy is a co-owner and operator of Brachel Marketing dba Lone Goose Bakery, LoneGooseBakery.com, poppyseedtearecipe.com, and their trademarks.

27.     Defendant Brandon McCarthy also is the author of a book, Poppy Seed Tea: A Complete Guide to This Powerful Tea; a website, PoppySeedTeaRecipe.com, and numerous online videos and blog posts promoting unwashed poppy seeds and poppy seed tea.

28.     Brandon McCarthy utilized Lone Goose Bakery to sell, supply, distribute, and market unwashed blue poppy seeds for use in poppy seed tea throughout the United States, including to Georgia and New Jersey.

29.     This Court has specific personal jurisdiction over Brandon McCarthy.  First, through Lone Goose Bakery, Brandon McCarthy obtained enormous quantities of unwashed poppy seeds from New Jersey.  In a single 13-month period, through Lone Goose Bakery, Brandon

McCarthy purchased 69 1,600 pound pallets of unwashed poppy seeds from New Jersey's JJ Nuts, for which it paid JJ Nuts $1,027,600. Second, throughout Lone Goose Bakery's *entire* history, Brandon McCarthy obtained *all* of Lone Goose Bakery's unwashed poppy seeds from New Jersey, first from New Jersey's Sincerely Nuts, then from New Jersey's JJ Nuts.

30.     **Defendant Rachel McCarthy (neé Hogan).**   At all times relevant hereto, Defendant Rachel McCarthy (née Hogan) was a resident of Tulsa in Tulsa County, Oklahoma. Defendant Rachel McCarthy currently resides at and may be served at 1002 E. 20th Street, Tulsa, OK 74120.

31.     Defendant Rachel McCarthy is a co-owner and operator of Brachel Marketing dba Lone Goose Bakery, LoneGooseBakery.com, poppyseedtearecipe.com, and their trademarks.

32.     Rachel McCarthy utilized Lone Goose Bakery to sell, supply, distribute, and market unwashed blue poppy seeds for use in poppy seed tea throughout the United States, including to Georgia and New Jersey.

33.     This Court has specific personal jurisdiction over Rachel McCarthy.  First, through Lone Goose Bakery, Rachel McCarthy obtained enormous quantities of unwashed poppy seeds from New Jersey.  In a single 13-month period, through Lone Goose Bakery, Rachel McCarthy purchased 69 1,600 pound pallets of unwashed poppy seeds from New Jersey's J.J. Nuts, for which it paid JJ Nuts $1,027,600.  Second, throughout Lone Goose Bakery's *entire* history, Rachel McCarthy obtained *all* of Lone Goose Bakery's unwashed poppy seeds from New Jersey, first from New Jersey's Sincerely Nuts, then from New Jersey's JJ Nuts.

### 2.     *The Lone Goose Transfer Defendants*

34.     **Defendant Brachel Real Estate, LLC**.  At all times relevant hereto, Defendant Brachel Real Estate, LLC ("**Brachel Real Estate**") was a company organized and existing under

the laws of the State of Oklahoma with its principal place of business located at 1002 E. 20th Street, Tulsa, OK 74120. Brachel Real Estate may be served through its registered agent Christopher L. Carter at 320 South Boston Avenue, Suite 200, Tulsa, Oklahoma 74103 or at its principal place of business, 1002 E. 20th Street, Tulsa, OK 74120

35. **Defendant 1519 Brachel Real Estate, LLC.**  At all times relevant hereto, Defendant 1519 Brachel Real Estate, LLC ("**1519 Brachel**") was a company organized and existing under the laws of the State of Oklahoma with its principal place of business located at 1609 South Boston Avenue, Tulsa, OK 74119.  1519 Brachel may be served through its registered agent Christopher L. Carter at 320 South Boston Avenue, Suite 200, Tulsa, Oklahoma 74103 or at its principal place of business at 1609 South Boston Avenue, Tulsa, OK 74119.

36. **Defendant Rachel C. McCarthy Trust.** At all times relevant hereto, Defendant Rachel C. McCarthy Trust ("**McCarthy Trust**" and together with 1519 Brachel and Brachel Real Estate, the "**Lone Goose Transfer Defendants**") was a trust organized and existing under the laws of the State of Oklahoma with its principal address located at 1002 E. 20th Street, Tulsa, OK 74120. McCarthy Trust may be served at its principal address at 1002 E. 20th Street, Tulsa, OK 74120.

37. This Court has specific personal jurisdiction over the Lone Goose Transfer Defendants.  First, through Lone Goose Bakery, Brandon and Rachel McCarthy obtained enormous quantities of unwashed poppy seeds from New Jersey.  In a single 13-month period, through Lone Goose Bakery, Brandon and Rachel McCarthy purchased 69 1,600 pound pallets of unwashed poppy seeds from New Jersey's J.J. Nuts, for which it paid JJ Nuts $1,027,600.  Second, throughout Lone Goose Bakery's *entire* history, Brandon and Rachel McCarthy obtained *all* of Lone Goose Bakery's unwashed poppy seeds from New Jersey, first from New Jersey's Sincerely

Nuts, then from New Jersey's JJ Nuts. Third, Brandon and Rachel McCarthy fraudulently transferred to the Lone Goose Transfer Defendants their profits from their sale of these unwashed poppy seeds that they sourced from New Jersey.

### 3. The Supplier Defendants

38. **Defendant Bedemco Import-Export, Inc. dba Bedemco, Inc.** Defendant Bedemco Import-Export, Inc. dba Bedemco, Inc. (hereinafter "**Bedemco**"), is a corporation organized, incorporated, and existing under the laws of the State of New York with its principal place of business located at 3 Barker Ave., Suite #325, White Plains, NY 10601.

39. Bedemco may be served with process at its principal place of business at 3 Barker Ave., Suite #325, White Plains, NY 10601 or at 200 Hamilton Avenue, White Plains, NY 10601.

40. Bedemco is engaged in the business of selling, supplying, distributing, and marketing "wholesale natural and organic dried fruits, nuts, and feeds to the food industry" throughout the United States, including to the state of New Jersey.

41. Bedemco's food products are sold to, supplied to, distributed to, marketed to, and consumed throughout the United States, including in New Jersey.

42. This Court has specific personal jurisdiction over Bedemco. Bedemco sold, supplied, distributed, marketed, and shipped poppy seeds to Sincerely Nuts in New Jersey in 2017, January 2018, February 2018, and November 2018. Bedemco received its poppy seeds from Fuerst Day Lawson, Ltd., through the port in Newark, New Jersey. Bedemco sold unwashed poppy seeds to Sincerely Nuts, which sold them to Lone Goose Bakery. Lone Goose Bakery then sold poppy seeds to Todd Eugene Shirley, causing his death.

43. **Defendant Fuerst Day Lawson, Inc.** Defendant Fuerst Day Lawson, Inc. ("**Fuerst Inc.**") is a corporation organized, incorporated, and existing under the laws of the State

of New Jersey with its principal place of business in Alabama. Fuerst is thus a citizen of both the State of Alabama and State of New Jersey.

44.     Fuerst Day Lawson, Inc. is a sister company of Fuerst Day Lawson, Ltd.

45.     The New Jersey Secretary of State lists Fuerst Day Lawson, Inc.'s principal business address as 777 Passaic Ave., Suite 3, Clifton, NJ 07012, which is in Passaic County.  The Alabama Secretary of State list Fuerst Day Lawson, Inc.'s business address as 870 Springfield Road South, Union, New Jersey 07083, which is in Union County.  The District Court of New Jersey's "Vicinage Lines for Case Assignment," would assign cases against Fuerst Day Lawson, Inc. (located in either Passaic County or Union County) to the District of New Jersey at Newark.

46.     Fuerst Inc. may be served with process through its Alabama registered agent Gary Schwartz at 510 Brickyard Road, Phenix City, AL 36869-3610, or its business address at 870 Springfield Road, Union, NJ 07083.

47.     Fuerst Inc. is engaged in the business of selling, supplying, distributing, and marketing  "flavours and fillings, bakery pastes and glazes, fruit compotes and granolas, juices & blends, functional energy and vitamin ingredients, to FMCG [fast-moving consumer goods] menu concepts and finished products" throughout the United States, including to New Jersey.

48.     Fuerst Inc.'s food products are distributed to, sold, and consumed throughout the United States, including in New Jersey.

49.      This Court has general personal jurisdiction over Fuerst Day Lawson, Inc.  Fuerst Day Lawson, Inc. is incorporated in New Jersey, with its principal place of business in Clinton, New Jersey.

50.     **Defendant Fuerst Day Lawson, Ltd.**  Defendant Fuerst Day Lawson, Ltd. ("**Fuerst Ltd.**," and together with Fuerst Inc., the "**Fuerst Defendants**"), is a corporation

organized, incorporated, and existing under the laws of the country of England with its registered office address, main trading address, and principal place of business in London, England. Fuerst Ltd. is thus a citizen of the Country of England.

51.     Fuerst Day Lawson, Ltd. is a sister company of Fuerst Day Lawson, Inc.

52.     Fuerst Ltd. may be served with process through the Hague Convention through its registered office address at Metropolitan Wharf, 70 Wapping Wall, London, England, E1W 3SS, or at its main trading address and principal place of business at Metropolitan Wharf, 70 Wapping Wall, London, E1W 3SS, United Kingdom.

53.     Fuerst Ltd. is engaged in the business of selling, supplying, distributing, and marketing "flavours and fillings, bakery pastes and glazes, fruit compotes and granolas, juices & blends, functional energy and vitamin ingredients, to FMCG [fast-moving consumer goods] menu concepts and finished products" throughout the world, including to the United States and New Jersey.

54.     Fuerst Ltd.'s food products are distributed to, sold, and consumed throughout the world including in the United States and New Jersey.

55.     This Court has both general and specific personal jurisdiction over Fuerst Day Lawson, Ltd.  Fuerst Day Lawson, Ltd. is subject to general jurisdiction in New Jersey through its New Jersey sister company, Fuerst Day Lawson, Inc. Fuerst Day Lawson, Inc. is incorporated in New Jersey, with its principal place of business in Clinton, New Jersey.

56.      This Court also has specific personal jurisdiction over Fuerst Day Lawson, Ltd., an English company, is "a sister company" of New Jersey's Fuerst Day Lawson, Inc. Fuerst Day Lawson, Ltd. shipped unwashed poppy seeds from England to Bedemco, Ultra Trading International, Ltd. and itself through the ports of Newark, New Jersey, and New York City.  In

2017, 2018, and 2019, Fuerst Day Lawson, Ltd., shipped 13,651 50 pound bags of unwashed poppy seeds (that is, 682,550 pounds) to New Jersey, through the Newark, New Jersey port.  Fuerst Day Lawson, Ltd. sold unwashed poppy seeds to Bedemco, which sold them to Sincerely Nuts. Sincerely Nuts then sold poppy seeds to Lone Goose Bakery, which sold them to Todd Eugene Shirley, causing his death.

57.     Fuerst Ltd.'s contacts with New Jersey are sufficient that Fuerst Ltd. should reasonably expect to be brought to court in New Jersey.

58.     **Defendant JJ Nuts, LLC.** Defendant JJ Nuts, LLC ("**JJ Nuts**"), is a corporation organized, incorporated, and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. JJ Nuts is thus a citizen of the state of New Jersey.

59.     JJ Nuts' principal place of business is located in New Jersey at 189 Berdan Avenue, Suite 216, Wayne, New Jersey 07470, in Passaic County.  The District Court of New Jersey's "Vicinage Lines for Case Assignment," would assign cases against JJ Nuts (located in Passaic County) to the District of New Jersey at Newark.

60.     This Court has general personal jurisdiction over JJ Nuts.

61.     JJ Nuts may be served with process through its registered agent John Amore, 33 Washburn Road, Pompton Plains, NJ 07444-1661.

62.     JJ Nuts is engaged in the business of selling, supplying, distributing, and marketing "dried fruits, nuts & seeds" throughout the United States, including to New Jersey.

63.     **Defendant Unicorn Ingredients, Ltd.** Defendant Unicorn Ingredients, Ltd. ("**Unicorn Ingredients**") is a corporation organized, incorporated, and existing under the laws of the country of England with its registered place of business in Surrey, England. Unicorn Ingredients is thus a citizen of the Country of England.

64.     Unicorn Ingredients may be served with process through the Hague Convention through its registered agent, Albany House, Claremont Lane, Esher, Surrey, KT10 9FQ, or at its principal place of business or main trading address at 6 South Street, Epsom, Surrey KT18 7PF. Unicorn Ingredients is engaged in the business of selling, supplying, distributing, and marketing "seeds and other ingredients" throughout the world, including in the United States and New Jersey.

65.     Unicorn Ingredients, Ltd. is subject to this Court's specific personal jurisdiction. Unicorn Ingredients, Ltd. sold, supplied, distributed, marketed, and shipped unwashed poppy seeds from England to JJ Nuts in New Jersey.  In 2018 and 2019, Unicorn Ingredients shipped 12,874 50-pound bags of unwashed poppy seeds (that is, 643, 700 pounds) to JJ Nuts, through the port of Newark, New Jersey.  Unicorn Ingredients sold the unwashed poppy seeds to JJ Nuts, which  sold them to Sincerely Nuts.  Sincerely Nuts then sold poppy seeds to Lone Goose Bakery, which sold poppy seeds to Todd Shirley, causing his death.

66.     **Defendant Sincerely Nuts, Inc.** Defendant Sincerely Nuts, Inc. dba Sincerely Nuts ("**Sincerely Nuts**"), is a corporation organized, incorporated, and existing under the laws of the State of New York with its principal place of business in New Jersey. Sincerely Nuts is thus a citizen of the states of New York and New Jersey.

67.     This Court has general personal jurisdiction over Sincerely Nuts, Inc. dba Sincerely Nuts.

68.     Sincerely Nuts may be served with process through its registered agent Albert Esses, 253 Wagner Street, Middlesex, NJ 08846, its principal place of business at  253 Wagner St., Middlesex, NJ 08846 (both in Northern Middlesex County), or its office registered with the New York Department of State at 148 39th Street, 5th Floor, Brooklyn, NY 11232.

69.     Based upon its principal place of business's address in Northern Middlesex County, the District Court of New Jersey's "Vicinage Lines for Case Assignment," would assign cases against Sincerely Nuts (located in Northern Middlesex County) to the District of New Jersey at Newark.

70.     Sincerely Nuts is engaged in the business of selling, supplying, distributing, and marketing "nuts, seeds, dried fruits, gift trays, and much more"—including unwashed poppy seeds—throughout the United States, including to New Jersey.

71.     Sincerely Nuts food products and unwashed poppy seeds are distributed to, sold, supplied to, marketed to, and consumed throughout the United States, including in New Jersey.

72.     Bedemco, Fuerst Inc., Fuerst Ltd., Fuerst USA, JJ Nuts, Unicorn Ingredients, and Sincerely Nuts (the "Supplier Defendants") sold, supplied, distributed, marketed, imported, and/or exported unwashed blue poppy seeds.

73.     Lone Goose Bakery's Blue Bird Poppy seeds contained unwashed blue poppy seeds sourced from Supplier Defendants.

### 4.     *John Doe Defendants*

74.     Defendants, **JOHN DOE CORPORATIONS 1-10**, are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who sold, supplied, distributed, or marketed the unwashed poppy seeds to which Plaintiff Todd Shirley was exposed.

75.     Defendants, **JOHN DOE CORPORATIONS 11-20**, are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or

liability of those who sold, supplied, distributed, or marketed the unwashed poppy seeds to which Plaintiff Todd Shirley was exposed.

### 5.     *The Defendants*

76.     The Lone Goose Bakery Defendants, Lone Goose Transfer Defendants, and/or Supplier Defendants are hereafter collectively referred to as "Defendants."

### III.     JURISDICTION AND VENUE

77.     Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

78.     This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, and it is between citizens of different states and citizens of a state and citizens or subjects of a foreign state.

79.     Defendants each have certain minimum contacts with the United States District Court for the District of New Jersey such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.  As discussed in Section II, above, the United States District Court for the District of New Jersey has general or specific personal jurisdiction over all Defendants.

80.     Venue in the United States District Court for the District of New Jersey is proper pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in this judicial district, and because all Defendants were subject to general or specific personal jurisdiction in this judicial district at the time of the commencement of the action.

81.     The District of New Jersey's "Vicinage Lines for Case Assignment" would assign cases against all Defendants, herein, to the District of New Jersey at Newark, based upon the

location of their contacts with New Jersey.  As discussed in in Section II, above, Sincerely Nuts'

principal place of business is in Northern Middlesex County, JJ Nuts principal place of business

is in Passaic County, and Fuerst Day Lawson, Inc. is located in either Passaic County or Union

County.  The Newark Port is located in Essex County.  Further, the foreign Defendants' poppy

seed shipments were to or from Sincerely Nuts, JJ Nuts, Fuerst Day Lawson, and/or the Newark

Port.

## IV.    FACTS

### A.    *Lone Goose Bakery Is a Seller of a Food Product, Blue Bird Poppy Seeds.*

82.    Defendants Brandon McCarthy and Rachel McCarthy (collectively, the

"**McCarthys**") own and operate Brachel Marketing, LLC dba Lone Goose Bakery ("**Brachel**

**Marketing**"), which in turn owns and operates the online retailer, Lone Goose Bakery (together

with the McCarthys and Brachel Marketing, the "**Lone Goose Bakery Defendants**").

83.    According to Brachel Marketing's trademark applications, Lone Goose Bakery is

in the "Staple Food Products" business. Specifically, Lone Goose Bakery is a seller, supplier,

distributor and marketer of food products, including unwashed blue poppy seeds.

84.    Lone Goose Bakery packages, markets, distributes, and sells these unwashed blue

poppy seeds under its brand name, Blue Bird Poppy Seeds.



85.     Like other food products, Lone Goose Bakery's Blue Bird Poppy Seeds come with a "Nutrition Facts" label.



**B.      *Lone Goose Bakery Marketed Its Blue Bird Poppy Seeds as Unwashed Poppy Seeds.***

86.     At all relevant times, the Lone Goose Bakery Defendants marketed their products through multiple online platforms, including related websites such as www.LoneGooseBakery.com, www.PoppySeedTeaRecipe.com and www.HerbalTeaHour.com; and social media accounts (Pinterest, Facebook, Twitter, and YouTube) operated by, or on behalf of, Lone Goose Bakery, PoppySeedTea, and PoppySeedTeaRecipe.

87.     These marketing platforms directed consumers to Lone Goose Bakery's website, www.LoneGooseBakery.com, where they could then purchase unwashed Blue Bird Poppy Seeds.

17



• 5 Pounds of Unwashed Poppy Seeds

88.     Examples of the Lone Goose Bakery Defendants' marketing efforts are provided

below:

i.      Pinterest:



    ii.       PoppySeedTeaRecipe.com YouTube Account:[1]



    iii.      [www.PoppySeedTeaRecipe.com](www.PoppySeedTeaRecipe.com):



---

[1] The full video is incorporated by reference as if fully set forth herein.  The video can be accessed at: https://www.youtube.com/watch?v=vM9cOJJS824. In the video above, Brandon McCarthy gives a "review of Blue Bird Poppy Seeds.  A product of Lone Goose Bakery."  Mr. McCarthy claims that, "The quality of these <u>unwashed</u> poppy seeds is currently the best on the market." (Emphasis added.)

### ENGLISH POPPY SEED HARVEST: INTRO

As many of you already know, the prices for unwashed poppy seeds have increased rapidly over the past few months.  I have previously discussed the reasons for the increase in prices, but i am still receiving questions regarding prices.  I decided to write this post to update everyone about the 2017 English Poppy Seed Harvest.  I hope that it can help clarify the current situation and make people feel more at ease.

Check out my separate post that Lists the <u>Best Unwashed Poppy Seeds for Tea</u>.  I update it regularly and just finished revising it again this morning.

89.     Brachel Marketing's trademark applications for Lone Goose Bakery reflect that Lone Goose Bakery's goods and services include "Unprocessed poppy seeds."

**C.     Poppy Seed Tea**

90.     The opium poppy, *Papaver somniferum*, produces opiate alkaloids, including morphine, codeine, and thebaine, which are concentrated in the "poppy straw."

91.     The U.S. Department of Justice defines "poppy straw" as parts of the poppy plant other than the seeds.

92.     Poppy seeds can become contaminated by poppy straw in the fields and during processing, thus contaminating the seeds with high levels of morphine, codeine, thebaine, and other opiate alkaloids.  These poppy seeds are considered "unwashed" for purposes of marketing, but can also be called "unprocessed," "natural," "or "raw" poppy seeds.

93.     Poppy Seed Tea is made by pouring water or other liquids over unwashed poppy seeds to create a brew, like one would brew coffee. The brew is then consumed. If the poppy seeds are unwashed seeds and/or have bits of plant material mixed in with them, poppy straw is likely present. By brewing the unwashed poppy seeds, morphine, codeine, and thebaine contained in the poppy straw are transferred to the liquid. This results in the tea containing morphine, codeine, and thebaine. Both morphine and codeine are Schedule II narcotics under the Controlled Substances Act.

   **D.    Lone Goose Bakery Marketed Its Unwashed Poppy Seeds for Use in Poppy Seed Tea**

94.    The Lone Goose Bakery Defendants marketed their unwashed Blue Bird Poppy Seeds for use in Poppy Seed Tea.

95.    Accordingly, an intended and reasonably foreseeable use Lone Goose Bakery's Blue Bird Poppy Seeds was, at all relevant times, using the unwashed poppy seeds to make Poppy Seed Tea.

96.    Using the marketing pseudonym "Brandon McPoppy," Brandon McCarthy wrote an instructional how-to book about making Poppy Seed Tea.  The book was called Poppy Seed Tea: A Complete Guide to This Powerful Tea. The book was sold on Amazon.com. According to the author, the book "includes detailed methods for making poppy seed tea."

97.    "Brandon McPoppy's" book was listed on Amazon and GoodReads:



98.    "Brandon    McPoppy's"    book    was    featured    prominently    on www.PoppySeedTeaRecipe.com, a website owned and operate by the Lone Goose Bakery Defendants:

**POPPY SEED TEA**
A Community Dedicated to this Powerful Tea

**Discover the Secrets of Poppy Seed Tea: Book**





99.     On another website owned and operated by the Lone Goose Bakery Defendants, www.PoppySeedTeaRecipe.com, Brandon McCarthy wrote articles promoting the use of unwashed poppy seeds for making Poppy Seed Tea:

**POPPY SEED TEA**
A Community Dedicated to this Powerful Tea

**POPPY SEED TEA**
A Community Dedicated to this Powerful Tea





MAY 19, 2017 BY BRANDON MCPOPPY

JUNE 16, 2017 BY BRANDON MCPOPPY

**POPPY SEED TEA**
A Community Dedicated to this Powerful Tea



MAY 29, 2017 BY BRANDON MCPOPPY



MAY 22, 2017 BY BRANDON MCPOPPY

Top 5 Ways to Make Poppy Tea Stronger

100.    Brandon McCarthy promoted Blue Bird Poppy Seeds as a way to make Poppy Seed

Tea *stronger* on yet another website owned and operated by the Lone Goose Bakery Defendants,

www.PoppySeedTeaRecipe.com:

**MAKE POPPY TEA STRONGER | INTRO**

Poppy seed tea is becoming increasingly popular, and more people are starting to purchase poppy seeds regularly.  The price of purchasing bulk poppy seeds isn't too high, but the amounts can add up over time.  Luckily, there are several cheap ways to Make Poppy Tea stronger.  These tips will work for both poppy pod tea and poppy seed tea.  These tips can be used to make poppy tea stronger and save money!

This post is for informational purposes only, I do not suggest growing or ingesting poppy plants in any form.  It is dangerous and can lead to addiction and even has the possibility to be fatal especially consumed in large amounts.  Avoid consuming with other prescription meds, and speak with your doctor prior to drinking any forms of herbal tea.

**Choose the Best Poppy Seeds**

One of the first steps to make delicious poppy seed tea is to choose the correct poppy seeds.  One brand has recently set itself apart from the others, Blue Bird Poppy Seeds.  Check out my Blue Bird Video Review for more info or click the picture below to visit the Lone Goose Bakery website to purchase.



101.    In his review of Blue Bird Poppy Seeds on Lone Goose Bakery's YouTube channel,

Brandon McCarthy says, "While it is true that Blue Bird Poppy Seeds are quite a bit more expensive than many of its competitors, I've found that the quality allows me to use them over a long-extended period of time. That means that the price isn't really that bad." The implication is that Blue Bird Poppy Seeds are strong enough (*i.e.*, contain enough opiate-containing plant matter) to be make multiple batches of Poppy Seed Tea. You cannot eat the same seed twice. But Mr. McCarthy claims you can use the same Blue Bird Poppy Seeds multiple times to make multiple batches of Poppy Seed Tea.

102.    Lone Goose Bakery Defendants make and made representations online and on social media—through videos, blog posts, tweets, pins, and comments—promoting the purchase of unwashed poppy seeds for use in Poppy Seed Tea by:

a.    Providing resources and recipes on how to make Poppy Seed Tea from unwashed poppy seeds;

b.    Product reviews of its own product, Blue Bird Poppy Seeds, touting them as unwashed poppy seeds;

c.    Explaining how to verify whether poppy seeds were unwashed;

d.    Explaining how to verify whether poppy seeds are from the "correct plant";

e.    Representing that unwashed poppy seeds help in blood pressure regulation;

f.    Representing that poppy seed tea has "pain relieving effects":

g.    Representing that poppy seed tea is helpful for "anxiety reduction."

103.    The Lone Goose Bakery Defendants' marketing and packaging assures customers that "quality [of Blue Bird Poppy Seeds] has been tested and verified."

### E.    *The Deadly History of Poppy Seed Tea*

104.    Before Lone Goose Bakery ever sold unwashed Blue Bird Poppy Seeds to Todd Eugene Shirley , multiple people had died from Poppy Seed Tea.

105.    Several of these deaths were publicly reported in the media, including:

    a.      In 2016, Stephen Patrick Hacala, Jr. died from "morphine intoxication" caused by the tea made from unwashed poppy seeds;

    b.      In 2016, a college student died following consumption of poppy seed tea in Virginia. The reports stated that the seller of the poppy seeds instituted a policy to prohibit bulk sales of poppy seeds to consumers.

    c.      In 2014, a Danish man died from poppy seed tea.

    d.      In 2013, a twenty-seven-year-old man from the United Kingdom (where Defendant's claim their poppy seeds are sourced from) died after drinking a pint of poppy seed tea.

    e.      In 2012, a teenager from Nova Scotia and a man from Tasmania died as a result of morphine intoxication from drinking poppy seed tea.

    f.      In 2009, in a case reported by CNN, an eighteen-year-old from Texas passed away from poppy seed tea;

    g.      In 2009 a twenty-year-old from Colorado died from poppy seed tea;

    h.      In 2009, a thirty-year-old from Texas died from poppy seed tea, leaving two young children behind;

    i.      In 2009, a forty-year-old died from poppy seed tea in Washington;

    j.      In 2008, a seventeen-year-old was in a coma from a morphine overdose caused by poppy seeds. He later died after being removed from life support; and

    k.      In 2003, a seventeen-year-old from California died from morphine overdose from poppy seed tea.

106.    In 2010, the Department of Justice issued a Drug Alert following the deaths of five

men who had ingested Poppy Seed Tea shortly before their deaths.

107.    In July of 2018, Arkansas Attorney General Rutledge publicly wrote to retailers of poppy seeds to highlight dangers of unwashed poppy seeds and to request that the retailers remove the seeds from their sites. Attorney General Rutledge later issued a press release on the matter, stating: "This letter outlines the unknown dangers of unwashed poppy seeds," said Attorney General Rutledge. "[U]nwashed poppy seeds can contain substantial amounts of morphine, codeine and thebaine, which are harmful Schedule II controlled substances . . . . Attorney General Rutledge is asking these online retailers to remove all unwashed poppy seeds from their online catalogs and affiliated stores to help prevent the deaths of consumers in the future. Walmart has already taken action to no longer be part of the problem by removing unwashed poppy seeds from their shelves."

108.    On April 3, 2019, the Center for Science in the Public Interest wrote a public letter to the United States Attorney General, the Food and Drug Administration, and others stating that "[c]ontaminated poppy seeds and poppy seed pods pose a serious and immediate hazard to consumers." The letter goes on to explain that the contamination of the poppy seeds involves poppy straw and sap in the fields or during harvest.

109.    People continue to die from drinking Poppy Seed Tea made from unwashed poppy seeds. In 2018, a Michigan man died from consuming Poppy Seed Tea.  In 2019, a Georgia man died from consuming Poppy Seed Tea.  Both Poppy Seed Tea deaths were publicly reported in the news media.

110.    Several articles were published prior to Plaintiff's death related to morphine contained in raw or unwashed poppy seeds. Some of those articles include:

a.      Pelders, M.G. and Ros, J.J.W., *Poppy Seeds: Differences in Morphine and Codeine Content and Variation in Inter- and Intra-Individual Excretion*. Journal of Forensic Sciences, Vol. 41, No. 2, March 1996;

b.      Subodh BN, Murthy P, Chand PK, Arun K, Bala SN, Benegal V, Madhusudhan S., *A case of poppy tea dependence in an octogenarian lady*. Drug Alcohol Rev. 2010; and

c.      Lloyd-Jones DM, Bonomo Y, *Unusual presentations for pharmacotherapy—poppy seed dependence*. Drug Alcohol Rev. 2006.

111.    The sale of poppy seeds has been banned in other countries due to their morphine content, including Singapore, Saudi Arabia, Taiwan, China, and United Arab Emirates.

112.    As sellers, suppliers, distributors, and marketers of unwashed blue poppy seeds, Defendants are held to the expert standard of knowledge available to the relevant selling, supplying, distributing, and marketing community at the time the product was sold, supplied, distributed, or and/or marketed.

### F.      Defendants Knew About Poppy Seed Tea

113.    The Lone Goose Bakery Defendants knew or in the exercise of reasonable care should have known that their unwashed poppy seeds would be used to make Poppy Seed Tea.

114.    The Lone Goose Bakery Defendants' marketing of Blue Bird Poppy Seeds specifically promoted their use in Poppy Seed Tea.

115.    Supplier Defendants knew or in the exercise of reasonable care should have known that making Poppy Seed Tea was an intended and reasonably foreseeable use and/or misuse of their unwashed blue poppy seeds.

116.    For both the Lone Goose Bakery Defendants' Blue Bird Poppy Seeds and Supplier Defendants' unwashed blue poppy seeds, making Poppy Seed Tea was an intended and reasonably

foreseeable use and/or misuse.

**G.    *Unwashed Poppy Seeds Are an Adulterated Food Product***

117.    The unwashed blue poppy seeds sold by Lone Goose Bakery and Supplier Defendants were food products intended for human consumption.

118.    Unwashed poppy seeds (1) become contaminated with poppy straw and sap in the fields or during harvest, and (2) have not been washed or processed to remove the opium alkaloids.

119.    When marketed as foods:

a.    Contaminated poppy seeds are adulterated under 21 U.S.C. § 342(a)(1) and O.C.G.A. § 26-2-20 *et. seq*. because the food contains quantities of opiate alkaloids that render the food injurious to health, as evidenced by the numerous cases of overdose and death reported to date.

b.    Contaminated poppy seeds are adulterated under 21 U.S.C. § 342 (a)(4) and O.C.G.A. § 26-2-20 *et. seq*. because they have been prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health.

c.    Contaminated poppy seeds are misbranded under 21 U.S.C. §§ 343(a) and (i) to the extent that the labeling of the products fails to declare poppy straw and milky sap in addition to poppy seeds in the ingredients list.

120.    When marketed as dietary supplements:

a.    Contaminated poppy seeds are adulterated dietary supplements under 21 U.S.C. § 342(f) because they contain dietary ingredients (poppy straw and sap) that present a significant or unreasonable risk of injury.

b.    Contaminated poppy seeds are adulterated dietary supplements under 21 U.S.C. § 342(g) to the extent that they have been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations.

c.    Contaminated poppy seeds are misbranded dietary supplements under 21 U.S.C. § 343(s) to the extent that the labeling of the products fails to declare poppy straw and milky sap in addition to poppy seeds in the ingredients list.

121.   If marketed for pain cessation or other medical uses:

a.    Poppy seeds marketed as treatment for opioid addiction, pain cessation, or otherwise making medical claims are unapproved drugs, and are an enforcement priority under Agency guidance because they supplant effective treatments and pose safety risks.[2]

### H.    Unwashed Poppy Seeds Are a Defective Food Product

122.   The unwashed blue poppy seeds sold by Lone Goose and Supplier Defendants were an unreasonably dangerous and defective product because they contained quantities of opiate alkaloids that render the food injurious to health, as evidenced by the cases of overdose and death associated with unwashed poppy seeds reported to date.

### I.    Unwashed Poppy Seeds Are a Schedule II Narcotic

123.   When marketed for any purpose:

a.    Contaminated poppy seeds and poppy seed pods contain poppy straw, the knowing or intentional distribution of which is a violation of the Controlled Substances Act, 21 U.S.C. § 841(a).

124.   Upon information and belief, it is illegal to import unwashed poppy seeds into the United States.

---

[2] Guidance for FDA Staff and Industry Marketed Unapproved Drugs – Compliance Policy Guide. September 19, 2011. www.fda.gov/downloads/drugs/guidancecomplianceregulatoryinformation/guidances/ucm070290.pdf..

### J.     *The Unwashed Blue Poppy Seeds Were Defective When They Left Defendants' Control*

125.    The unwashed blue poppy seed product that was sold by Lone Goose Bakery Defendants and Supplier Defendants was defective and unreasonably dangerous at the time it left Defendants' control.

126.    Defendants' unwashed poppy seed products reached consumers, including Todd Eugene Shirley , without substantial alteration from the condition in which they were sold, supplied, distributed, and marketed by Defendants.

### K.     *Lone Goose Bakery Defendants Are Still Selling Unwashed Poppy Seeds*

127.    Lone Goose Bakery Defendants and Supplier Defendants still offer unwashed blue poppy seeds for sale.

128.    Supplier Defendants are still importing unwashed blue poppy seeds into the United States.

### L.     *Safer Alternatives Designs Were Available.*

129.    Safer alternative designs to unwashed poppy seeds were available.

130.    Three of the many safer alternative designs that were available include: washed poppy seeds, herbal teas, and FDA approved medications.

131.    As noted in the April 3, 2019 letter by the Center for Science in the Public Interest, "[t]he European Commission has developed guidance on good practices to prevent and reduce the presence of opium alkaloids in poppy seeds and poppy seed products. These practices begin with selecting seeds from varieties cultivated for food use, which are bred to contain a low level of opium alkaloids. Adequate pest control, prevention of bad harvesting conditions, and proper storage and labeling also help to reduce opiate content. Finally, appropriate processing can be highly effective: the combination of washing and drying can reduce morphine concentrations in

highly contaminated batches of raw poppy seeds (original concentration vary from 50 to 220 mg morphine/kg) down to concentrations below 4 mg morphine/kg without loss of quality and organoleptic properties."[3]

132.    Therefore, the opiate contamination can be brought down to safe levels by washing and drying the seeds.  In fact, most commercially available poppy seeds in the United States are washed.  Washed poppy seeds are one safer alternative design to unwashed poppy seeds.

133.    The Lone Goose Bakery Defendants promoted the soothing, calming, and anxiety reducing effects of their Blue Bird Poppy Seeds when used in Poppy Seed Tea.  Herbal teas, made with tea leaves, have long been known for their soothing, calming, and anxiety reducing effects. Herbal teas are one safer alternative design to unwashed poppy seeds used in Poppy Seed Tea.

134.    To the extent that unwashed blue poppy seeds and/or Poppy Seed Tea were marketed for pain relief or otherwise making medical claims, the FDA has approved multiple safe and effective medications for these purposes.  The FDA has never approved unwashed blue poppy seeds or Poppy Seed Tea for any purpose.  FDA approved medications are a safer alternative design.

### M.    Lone Goose Bakery Defendants Failed to Adequately Warn of the Danger

135.    As sellers, suppliers, distributors, and marketers of unwashed blue poppy seeds intended for human consumption, the Lone Goose Bakery Defendants and the Supplier Defendants knew or should have known that unwashed blue poppy seeds were unreasonably dangerous and could cause serious bodily injury or death to consumers.

136.    As sellers, suppliers, distributors, and marketers of unwashed blue poppy seeds that

---

[3] *See* European Commission. Commission recommendation of 10 September 2014 on good practices to prevent and to reduce the presence of opium alkaloids in poppy seeds and poppy seed products (2014/662/EU). Brussels, BE: 2014. https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32014H0662&from=EN.

they marketed specifically for use in Poppy Seed Tea, the Lone Goose Bakery Defendants and Supplier Defendants knew or should have known that Poppy Seed Tea was unreasonably dangerous and could cause serious bodily injury or death to consumers.

137.    Defendants provided no warnings and no adequate warnings to consumers concerning use, misuse, or potential dangers on their products.

138.    Defendants provided no warnings and no adequate warnings to consumers regarding the dangers of unwashed poppy seeds in Poppy Seed Tea.

139.    The Blue Bird Poppy Seed bags that the Lone Goose Bakery Defendants sold to Todd Eugene Shirley did not include an adequate warning.  In fact, they did not include <u>any</u> warning at all:





140.    Affixed to the bag is a "Nutritional Facts" label. This label says nothing about the dangers of consuming Poppy Seed Tea, or a potentially fatal opiate consumption.

 

141.    The Lone Goose Bakery Defendants' only warning on the Blue Bird Poppy Seed bag relates to a potential suffocation danger for babies and children.  But they do not warn that the bag contains food adulterated with potentially fatal opiates.  Nor do they warn against using Blue Bird Poppy Seeds to make Poppy Seed Tea.  Nowhere do they warn that Poppy Seed Tea has killed people.



142.     Despite the knowledge that unwashed poppy seeds are dangerous and are causing death to consumers, Defendants continue to market and sell "unwashed" poppy seeds which contain levels of morphine and codeine sufficient to cause death to consumers.

143.     Defendants provided no warnings or no adequate warnings to their customer, Todd Eugene Shirley , concerning the dangers, proper uses, or misuses of unwashed poppy seeds or Poppy Seed Tea.

### N.     *Supplier Defendants Failed to Provide an Adequate Warning*

144.     As sellers, suppliers, distributors, and marketers of unwashed blue poppy seeds intended for human consumption, the Supplier Defendants knew or should have known that unwashed blue poppy seeds were unreasonably dangerous and could cause serious bodily injury or death to consumers.

145.     As sellers, suppliers, distributors, and marketers of unwashed blue poppy seeds intended for human consumption, the Supplier Defendants knew or should have known that poppy seed tea was unreasonably dangerous and could cause serious bodily injury or death to consumers.

146.     The Supplier Defendants did not provide any warnings or any adequate warnings to consumers concerning the use, misuse, or potential dangers of unwashed poppy seeds on their product bags, packaging, or labels.

147.     Despite the knowledge that poppy seeds were dangerous had caused death to consumers, the Supplier Defendants continued to market and sell "unwashed" poppy seeds which contained levels of morphine and codeine sufficient to cause death to consumers.

148.     The Supplier Defendants provided no warnings or no adequate warnings to their customer, Todd Eugene Shirley, concerning the dangers, proper uses, or misuses of unwashed poppy seeds or Poppy Seed Tea.

34

### O.     *Lone Goose Bakery's Fraudulent Asset Transfers*

149.    On or before May 3, 2019, the Lone Goose Bakery Defendants learned that: (1) a woman in Utah Addie Kofford died after consuming poppy seed tea, (2) a man in Georgia, Todd Eugene Shirley, died after consuming poppy seed tea, and (3) Lone Goose Bakery's unwashed Blue Bird Poppy Seeds were found at the scenes of their deaths.

150.    Seven days later, on or about May 10, 2019, the Lone Goose Bakery Defendants transferred assets to the Rachel C. McCarthy Trust, including without limitation real property located at 1002 East 20th Street, Tulsa, OK, 74120.

151.    Beginning on or about August 12, 2020, the Lone Goose Bakery Defendants began transferring assets to Brachel Real Estate, including without limitation real property located at 1609 South Boston Avenue, Tulsa, OK 74119 and commercial property located  in Tula County, Oklahoma, Parcel # 25000-92-12-07910, Subdivision: MAPLE PARK ADDN, Legal: LT 4 BLK 11, Section: 12 Township: 19 Range: 12.

152.    Upon information and belief, on or about October 16, 2020, the Lone Bakery Goose Defendants began transferring assets to 1519 Brachel.

## V.     CAUSES OF ACTION

If the Court applies the substantive law of the State of Georgia, Plaintiffs plead the following Causes of Action under Georgia law: Counts V.A.1-8. Pleading in the alternative, if the Court applies the substantive law of the State of New Jersey, Plaintiffs plead the following Causes of Action under New Jersey law: Counts V.B.1-11.

## A.     <u>GEORGIA CAUSES OF ACTION</u>

### COUNT 1.     PRODUCTS LIABILITY / STRICT LIABILITY UNDER <u>O.C.G.A.</u> § 51-1-11

153.    Plaintiffs reallege and incorporate the above allegations as though fully set forth

herein.

154.    Defendants' unwashed blue poppy seeds suffered from design and/or manufacturing defects sufficient to cause each Defendant to be liable to Plaintiff under theories of product liability and strict liability for selling, supplying, distributing, or marketing the defective product.  The subject product was defective, *inter alia*, the product suffered from a design defect, and/or a manufacturing defect.

155.    The subject product possessed latent characteristics, including latent design defects and/or latent manufacturing defects, that existed at the time the subject product was sold, distributed, supplied, marketed, and/or manufactured and which continued to exist unknown to Plaintiff's Decedent until the product caused injury and death.

156.    From the time the product was sold and delivered, and throughout its use by Plaintiff's Decedent, the product was being used by Plaintiff's Decedent in the manner intended and/or reasonably foreseeable by the Defendant without any substantial change affecting its condition.

157.     From the time the Defendant's product was sold and delivered, and throughout its use by Plaintiff, the product was being used by Plaintiff's Decedent in the manner intended and/or reasonably foreseeable by the Defendant without any alteration.

158.    Each Defendant knew that the product would be used without inspection for defects, and by placing them on the market represented that the product could be safely ingested, without causing injury or death.

159.    Plaintiff's Decedent was unaware of the defects in Defendant's product.

160.    Defendants were engaged in the business of selling, supplying, distributing, and/or marketing food products, specifically unwashed blue poppy seeds.

36

161.   Defendants' unwashed blue poppy seeds were sold for use as a food product.

162.   Defendants' unwashed blue poppy seeds were intended for human consumption.

163.   The ordinary, intended, expected, and reasonably foreseeable uses and/or misuses of Defendants' unwashed blue poppy seeds included making Poppy Seed Tea.

164.   Defendants' unwashed blue poppy seeds contained design defects, manufacturing defects, marketing defects, and defectively inadequate warnings.  Each of these defects rendered Defendants' unwashed blue poppy seeds unreasonably dangerous.

165.   It was reasonably foreseeable to Defendants that consumers would use Defendants' unwashed blue poppy seeds to make Poppy Seed Tea.

166.   As sellers, suppliers, distributors, and/or marketers, Defendants had a duty to not sell, supply, distribute, and/or market a product that was defective or unreasonably dangerous.

167.   Defendants' unwashed blue poppy seeds reached the user or consumer without substantial change in the condition which they were sold.

168.   Defendants' unwashed blue poppy seeds were unreasonably dangerous for their ordinary, intended, expected, and reasonably foreseeable uses and/or misuses.

169.   Defendants' unwashed blue poppy seeds were dangerous to an extent beyond which would be contemplated by the ordinary buyer, consumer, or user of that product.

170.   Defendants' unwashed blue poppy seeds were unreasonably dangerous from the time they left Defendants' control because they contained sufficient opiate alkaloids (morphine and codeine) to cause serious bodily injury, morphine intoxication, and death, even based upon a reasonable and foreseeable level of consumption.  An ordinary consumer of the seeds would not expect them to contain sufficient quantities of opiate alkaloids (morphine and codeine) to cause serious bodily injury, morphine intoxication, and death when consumed.

171.    Defendants' unwashed blue poppy seeds were unreasonably dangerous because an ordinary consumer of the seeds would not expect them to contain sufficient quantities of opiate alkaloids (morphine and codeine) to cause serious bodily injury, morphine intoxication, and death when used for their intended and reasonably foreseeable use and/or misuse, making poppy seed tea.

172.    Defendants' unwashed blue poppy seeds were unreasonably dangerous because they:

a.      Were adulterated foods under 21 U.S.C. § 342(a)(1) and the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq*.;

b.      Contained quantities of opiate alkaloids that render the food injurious to health, as evidenced by the numerous cases of overdose and death reported to date;

c.      Were adulterated foods under the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq.,* because they contained poisonous or deleterious substance(s) which rendered them injurious to health;

d.      Were adulterated foods under 21 U.S.C. § 342(a)(4) and the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq*. because they have been prepared, packed, or held under insanitary conditions whereby they were rendered injurious to human health;

e.      Were misbranded under 21 U.S.C. § 343(a) and (i) to the extent that the labeling of the products failed to include poppy straw and milky sap in addition to poppy seeds in the ingredients list;

f.      Were adulterated dietary supplements under 21 U.S.C. § 342(f) and the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq*.  because they contain dietary ingredients (poppy straw and sap) that present a significant and unreasonable risk of injury;

g.    Were adulterated dietary supplements under 21 U.S.C. § 342(g) and the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq.* to the extent that they have been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations;

h.    Were misbranded dietary supplements under 21 U.S.C. § 343(s) to the extent that the labeling of the products failed to include poppy straw and milky sap in addition to poppy seeds in the ingredient list;

i.    Contained sufficient opiate alkaloids to render them injurious to the health of consumers;

j.    Were unapproved drugs that supplant effective approved treatments and pose safety risks; and

k.    Contained poppy straw, the knowing or intentional distribution of which is a violation of the Controlled Substances Act, 21 U.S.C. § 841(a).

173.    Safer alternative designs were available to Defendants that were technically and economically feasible under the circumstances.

174.    Defendants sold, supplied, distributed, and marketed the adulterated food that injured Todd Eugene Shirley.

175.    At the time Defendants sold their unwashed blue poppy seeds, the unwashed blue poppy seeds were defective and unreasonably dangerous for their ordinary, expected, intended, and reasonably foreseeable use and/or misuse because they contained sufficient opiate alkaloids (morphine and codeine) to render them injurious to the health of consumers.

176.    The adulterated food product that Defendants sold, supplied, distributed, and marketed was delivered to Todd Eugene Shirley without any change in its defective condition.

177.   The adulterated food product that Defendants sold, supplied, distributed, and marketed was used and consumed by Todd Eugene Shirley in its ordinary, expected, intended, and reasonably foreseeable use.

178.   Todd Eugene Shirley used the poppy seeds in a reasonable and foreseeable manner when he made Poppy Seed Tea. Upon information and belief, Defendants knew or should have known that consumers, like Plaintiff, would use the poppy seeds to make tea based on publicly available information like that on PoppySeedTeaRecipe.com related to the unwashed blue poppy seeds.

179.   The defective and unreasonably dangerous conditions of Defendants' unwashed blue poppy seed tea were a substantial factor, as well as the direct, proximate and legal cause of Todd Eugene Shirley 's death.

180.   Todd Eugene Shirley's death would not have occurred but for the defective and unreasonably dangerous condition of Defendants' unwashed blue poppy seeds.

181.   The direct, proximate, and legal cause of Plaintiff's death was the consumption of the Poppy Seed Tea made from the defective and unreasonably dangerous poppy seeds supplied by Defendants.

182.   Alternative safer designs were available to and economically feasible to Defendants when they sold, supplied, distributed, and marketed their unwashed blue poppy seeds.  The cost of any such safer alternative design was insignificant compared to the seriousness and severity of the harm that could result and did result to Todd Eugene Shirley.  The cost of the alternative design was a cost that the market and consumers could bear, and any potential cost was far outweighed by the known benefits of such alternative design.

183.   Defendants are strictly liable to Plaintiffs for the harm proximately caused by the

sale, supply, distributions, and marketing of an unreasonably dangerous and defective product, unwashed blue poppy seeds.

184.    Plaintiff is entitled to recover damages against each Defendant under a theory of Strict Liability in amount to be proven at trial.

185.    The existing manufacturing defects and/or design defects of the unwashed poppy seeds that Defendants sold, supplied, distributed, and marketed were the proximate cause of Plaintiff's Decedent's injury and death, as well as all damages sought by Plaintiff in this action.

186.    Plaintiffs are entitled to recover damages against each Defendant under a theory of Product Liability and Strict Liability, in an amount to be proven at trial.

## COUNT 2.    BREACH OF WARRANTY

187.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

188.    Defendants are liable to Plaintiff for breaching express and implied warranties that they made regarding their adulterated product, unwashed blue poppy seeds, that Plaintiff purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use.  Specifically, Defendants expressly warranted, through their sale of food to the public and by statement and conduct of their employees and agents, that the food they prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

189.    Plaintiff alleges that the opiate alkaloid-contaminated food that Defendants sold, supplied, distributed, and/or marketed, and which Plaintiff purchased and consumed, would not pass without exception in the trade and was, therefore, in breach of the implied warranty of merchantability.

190.     Plaintiff alleges that the opiate alkaloid-contaminated food that Defendants sold, supplied, distributed, and/or marketed, and which Plaintiff purchased and consumed, was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was, therefore, in breach of the implied warranty of fitness for its intended use.

191.     Defendants impliedly and expressly warranted that their unwashed blue poppy seeds were merchantable, fit for consumption, and safe for human consumption. Defendants further warranted that their unwashed blue poppy seeds were properly packaged and labeled.

192.     Defendants breached these warranties by selling, supplying, distributing, and/or marketing unwashed blue poppy seeds with unsafe, unknown, and unreasonably levels of opiate alkaloids (morphine and codeine) sufficient to cause death by "morphine intoxication."

193.     Defendants breached these warranties by failing to properly label their unwashed blue poppy seeds with proper instructions and warnings.  Upon information and belief, Todd Eugene Shirley  relied on the lack of warnings and instructions when he used Defendants' unwashed blue poppy seeds.  This reliance was a substantial factor and direct, proximate, and legal cause of his death.

194.     Defendants unwashed blue poppy seeds violated: 21 U.S.C. § 342(a)(1) and (4); 21 U.S.C. § 343(a), (i), and (s); 21 U.S.C. § 342(f) and (g); Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq.*; and 21 U.S.C. § 841(a).

195.     Defendants' breaches of warranty caused Todd Eugene Shirley's death.

196.     Defendants knew or had reason to know of the particular purposes and uses for which their unwashed blue poppy seeds were intended, required, and were to be used, as well as reasonably foreseeable uses and misuses.  Defendants knew or had reason to know that purchasers, consumers, and users would reasonably rely upon Defendants' skill or judgment in selling,

supplying, distributing, and marketing and furnishing goods suitable for such purposes and reasonably foreseeable uses and/or misuses.  Defendants knew or had reason to know that purchasers, consumers, and users would rely on Defendants to disclose the risks and dangers of Defendants' unwashed blue poppy seeds for such purposes and reasonably foreseeable uses and/or misuses.

197.   Todd Eugene Shirley had no knowledge of the falsity or incompleteness of Defendants' statements and representations concerning Defendants' unwashed blue poppy seeds. Defendants had sole access to the material facts concerning defects in their unwashed blue poppy seeds and knew buyers, consumers, and users, such as Todd Eugene Shirley, could not have reasonably discovered such defects.

198.   Defendants' unwashed blue poppy seeds were not fit for the particular and reasonably foreseeable purposes for which they were intended and used, i.e., human consumption. Defendants' unwashed blue poppy seeds breached the implied warranty of fitness for their intended and reasonably foreseeable purposes, uses and/or misuses.

199.   At the time Defendants' unwashed blue poppy seeds were sold, supplied, distributed, and marketed, Defendants knew or reasonably should have known that they were not reasonably safe for their intended and foreseeable uses and/or misuses.

200.   At the time Defendants' unwashed blue poppy seeds were sold, supplied, distributed, and/or marketed, Defendants knew or reasonably should have known that they posed an unreasonable risk of injury to their users.  Defendants expressly and impliedly represented and/or warranted that their unwashed blue poppy seeds were of merchantable quality and safe and fit for intended and foreseeable uses and/or misuses and did not, at any time, retract or amend such representations and warranties, nor did Defendants at any time disclose the truth known to them—

that Defendants' unwashed blue poppy seeds did in fact pose an unreasonable risk of injury to their users when used in the intended and foreseeable uses and/or misuses.

201.    At the time that Todd Eugene Shirley  purchased and consumed Defendants' unwashed blue poppy seeds, Defendants' unwashed blue poppy seeds did not conform to the warranties, affirmations, and representations made by Defendants.  Defendants breached their express and implied warranties and those breaches were a direct, legal, and proximate cause of Plaintiffs' injuries and damages.

202.    The defects in Defendants' unwashed blue poppy seeds breached Defendants' implied and express warranties of merchantability and fitness for use.

203.    As a direct and proximate result of Defendants' breach of warranties, as set forth above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

204.    As a direct and proximate result of each Defendant's breach of warranties, as set forth above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

**COUNT 3:    NEGLIGENCE PER SE**

205.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

206.    Defendants owed a duty to the public, including Todd Eugene Shirley, to exercise reasonable care in selling, supplying, distributing, marketing, delivering, and/or receiving in commerce their unwashed blue poppy seeds.  Defendants breached this duty (and others) by selling, supplying, distributing, marketing, delivering, and/or receiving in commerce unwashed blue poppy seeds in a negligent and unlawful manner, in violation of applicable state and federal statutes, regulations, ordinances, codes, standards, and customs.

207.    Defendants had a duty to comply with all applicable local, state and federal regulations intended to ensure the purity and safety of their food products, including, but not limited to, the requirements of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 *et seq*. and the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq*., as well as the Controlled Substances Act, 21 U.S.C. § 841(a).

208.    Defendants violated: 21 U.S.C. § 342(a)(1) and (4); 21 U.S.C. § 343(a), (i), and (s); 21 U.S.C. § 342(f) and (g); the Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq*.; and 21 U.S.C. § 841(a).

209.    Pursuant to O.C.G.A. § 51-1-23, any person or entity who knowingly or negligently sells unwholesome provisions of any kind to another person, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or to his family, shall be liable in damages for such injury.

210.    Todd Eugene Shirley was among the class of persons designed to be protected by these local, state, and federal food safety and controlled substance statutes, laws, regulations, codes, or provisions pertaining to the selling, supplying, distributing, marketing, delivering, and/or receiving in commerce of similar products.

211.    Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their selling, supplying, distributing, marketing, delivering, and/or receiving in commerce of adulterated food.

212.    Defendants' wrongful conduct included without limitation: selling, supplying, distributing, marketing, delivering, and/or receiving in commerce unwashed blue poppy seeds with unsafe, unknown, and unreasonably levels of opiate alkaloids (morphine and codeine) sufficient to cause death by "morphine intoxication."

213.    As a direct and proximate result of the conduct of Defendants that was negligent *per se*, Plaintiffs sustained injury and damages in an amount to be determined at trial.

### COUNT 4:    PRODUCT LIABILITY NEGLIGENCE

214.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

215.    Each of Defendant's unwashed blue poppy seeds were sufficiently defective in their design and lack of warnings to cause each Defendant to be liable to Plaintiffs under theories of product liability based in negligence (negligent design and separately negligent failure to warn). Each of Defendant's unwashed blue poppy seeds were defective, *inter alia*, the product suffered from a design defect, was unreasonably dangerous for its intended uses, and lacked proper or sufficient warnings.  The subject products possessed latent characteristics and latent design defects existing at the time they were sold, supplied, distributed, and/or marketed which continued during the life of the product, including at the time Plaintiff consumed Poppy Seed Tea made from Defendants' unwashed blue poppy seeds.  Each Defendant either knew, or in the exercise of reasonable care should have known, that their products, based upon their design, would cause injuries in the form of personal injuries.

216.    At the time Defendants sold and delivered their products which resulted in Plaintiff's death, and at the time those products were used in the manner and environment intended they were without substantial change affecting their condition, the products contained latent characteristics or latent design defects, and were defective and unreasonably dangerous and otherwise unfit for their intended use in that:

a.    The products were negligently and defectively designed to contain opiate alkaloids, foreseeably were capable of causing severe personal injury and/or death, and failed

to include adequate protections necessary to allow Plaintiff to avoid exposure to a substance which was known, or should have been known by Defendants to be deleterious, poisonous and highly harmful to Plaintiff; and

b.　The products contained inadequate, deficient and insufficient warnings and otherwise failed to contain any warning that was sufficient to advise Plaintiff of the true danger that existed from the opiate alkaloids in Defendants' unwashed blue poppy seeds associated with the products' intended and reasonably foreseeable uses and/or misuses which was poisonous and extremely harmful to human health.

217.　Each Defendant knew that its products would be used without inspection for defects, and by placing them on the market represented that they would safe for human consumption.

218.　Plaintiff was unaware of the hazards and defects in the products of the Defendants, which made those products unsafe for consumption including, without limitation, in Poppy Seed Tea, to the degree that those products would cause Plaintiff to die.

219.　At all times relevant hereto, the unwashed blue poppy seeds were used in the manner intended and or reasonably foreseeable by the Defendants.

220.　Defendants sold, supplied, distributed, and/or marketed unwashed blue poppy seeds that were contaminated and/or adulterated with an unsafe, unknown, and unreasonably dangerous level of morphine and codeine. As a result of the contamination and/or adulteration, the unwashed blue poppy seeds were unfit for human consumption, thus defective, and unreasonably dangerous as distributed, supplied, marketed, and sold.

221.　Defendants knew or in exercising reasonable care should have known that:

a.      Defendants' unwashed blue poppy seeds were contaminated and/or adulterated with an unsafe, unknown, and unreasonably dangerous level of morphine and codeine at the time they left Defendants' control;

b.      Defendants' unwashed blue poppy seeds contained no warnings and/or inadequate warnings about their morphine or codeine content, the dangers of consuming them, and/or the dangers of their reasonably foreseeable uses and/or misuses;

c.      Defendants' unwashed poppy seeds and other unwashed poppy seeds available in the U.S. market were being marketed for use in Poppy Seed Tea;

d.      Defendants' unwashed poppy seeds contained no warnings and/or inadequate warnings about using them in Poppy Seed Tea;

e.      Consuming Defendants' unwashed blue poppy seeds, including consuming Poppy Seed Tea made from them, was likely to injure or kill its users; and

f.      The potential safety risks created by the defects in Defendants' unwashed blue poppy seeds, their marketing, and their lack of adequate warnings presented a substantial danger to people consuming or using Defendants' poppy seeds in their reasonably foreseeable uses and/or misuses, including serious bodily injury, morphine intoxication, and death.

222.   Defendants owed the following duties to all persons who consumed and/or used their poppy seeds, including Todd Eugene Shirley:

a.      To sell, supply, distribute, and/or market food products that were safe to consume and/or use, including their reasonably foreseeable uses and/or misuses; that were not contaminated or adulterated with morphine or codeine; and that were not in violation

48

of applicable local, state, and federal food safety or controlled substance laws, statutes, regulations, codes, or provisions.

b.     To comply with all applicable local, state, and federal food safety or controlled substance laws, statutes, regulations, codes, or provisions that pertained or applied to the selling, supplying, distributing, and/or marketing of their food products.

c.     To maintain their premises in a sanitary and safe condition so that the poppy seeds they sold, supplied, distributed, and/or marketed would not become contaminated or adulterated with morphine or codeine.

d.     To  use reasonable care in the selling, supplying, distributing, and/or marketing of their poppy seeds to prevent contamination or adulteration with morphine or codeine.

e.     To use ordinary care in the design of a product, selection of materials used in their product, and assembly of a product in order to protect users of the product from unreasonable risk of harm.

f.     To use ordinary care to inspect their product in order to protect users of the product from unreasonable risk of harm.

g.     To give an adequate warning of dangers inherent in the product.

h.     To give an adequate warning of the dangers in the reasonably foreseeable use and/or misuse of the product.

i.     To give reasonable and adequate instructions with respect to the conditions and methods of a product's safe use when danger is reasonably foreseeable in its use and/or misuse.

j.      To use ordinary care to sell wholesome products sold and distributed by reliable sellers and distributors and without impurities that are reasonably discoverable.

k.      To not sell food that has been adulterated or contaminated rendering it injurious to the health of consumers.

223.    Defendants breached each of these duties.

224.    In addition, Defendants breached the duties owed to their customers and/or users of their poppy seeds by committing the following acts and omissions:

a.      Failing to warn that Defendants' unwashed blue poppy seeds contained morphine or codeine in unsafe, unknown, and unreasonably dangerous levels;

b.      Failing to warn that consuming Defendants' unwashed blue poppy seeds could cause serious bodily injury, morphine intoxication, and/or death;

c.      Failing to warn that consuming Poppy Seed Tea made from Defendants' unwashed blue poppy seeds could cause serious bodily injury, morphine intoxication, and/or death;

d.      Failing to use ordinary care in the selection of materials used in the poppy seeds by selecting materials containing an unsafe and unreasonable content of morphine and codeine;

e.      Failing to use ordinary care in the design and marketing of the poppy seeds by marketing and using seeds containing an unsafe and unreasonable content of morphine and codeine;

f.      Failing to use ordinary care in the assembly and sale or distribution of the poppy seeds by selling or distributing the seeds in such a manner as to allow or create an unsafe, unknown, and unreasonable content of morphine and codeine;

g.   Failing to use ordinary care in the testing and inspection of the poppy seeds by allowing seeds to be sold with an unsafe, unknown, and unreasonable content of morphine and codeine;

h.   Failing to use ordinary care in the packaging and marketing of the poppy seeds by promoting seeds with an unsafe, unknown, and unreasonable morphine and codeine content without any warnings and/or adequate warnings on the packaging or marketing;

i.   Selling a product with unsafe impurities and unreasonable, unknown, and unsafe morphine and codeine content that were reasonably discoverable by the exercise of reasonable care;

j.   Supplying a product containing Schedule II narcotics, especially in such unsafe levels, without proper authorization;

k.   Violating 21 U.S.C. § 342(a)(1) and (4);

l.   Violating 21 U.S.C. § 343(a), (i), and (s);

m.   Violating 21 U.S.C. § 342(f) and (g);

n.   Violating Georgia Food Act, O.C.G.A. § 26-2-20 *et. seq.*;

o.   Marketing poppy seeds for pain cessation or otherwise making medical claims for an unapproved drug, supplanting approved and effective treatments, and posing safety risks; and

p.   Selling poppy seeds containing Schedule II narcotics in violation of 21 U.S.C. § 841(a).

225.   Had Defendants properly performed their duties, that would have prevented or eliminated the risk that Defendants' poppy seeds would be contaminated or adulterated with

morphine or codeine or any other dangerous substance at the time the products left Defendants'

control, thus preventing injury to consumers and/or users of their poppy seeds, including Todd

Eugene Shirley.

226.    If Defendants had fulfilled their duties, Todd Eugene Shirley  would not have died

as a result of his consumption of the Poppy Seed Tea made from the poppy seeds. The above

breaches of care by Defendants were the proximate cause of  Plaintiff's death. Upon information

and belief, Plaintiff relied upon the marketing of the poppy seeds by Defendants, and the lack of

warnings and instructions on safe levels of consumption, when using the poppy seeds. Such

reliance contributed and caused his death from the poppy seeds. Upon information and belief,

Defendants knew or should have known that the poppy seeds contained dangerously high opiate

levels. Defendants breached this duty,

227.    Defendants were negligent, grossly negligent, and/or reckless in the selling,

supplying, distributing, and marketing (i.e., inadequate warnings) of their unwashed blue poppy

seeds.

228.    Each of Defendants' acts or omissions was a substantial factor in and direct,

proximate, and legal cause of Todd Eugene Shirley 's death and Plaintiffs' injuries.  Todd Eugene

Shirley 's death and Plaintiffs' injuries would not have occurred but for Defendants' negligence.

229.    Defendants' negligent, grossly negligent, willful, wanton and reckless conduct, as

described above, was the direct and proximate cause of Plaintiffs' injuries and damages.

230.    Plaintiffs are entitled to recover damages against each Defendant for their

individual and their collective acts of negligence which contributed in causing the injuries and

damages incurred by Plaintiffs, in an amount to be proven at trial.

## COUNT 5:   NEGLIGENCE

231.   Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

232.   Each Defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the selling, supplying, distributing, and/or marketing of the food products that injured Todd Eugene Shirley, including the applicable provisions of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 *et seq*. and the Georgia Food Act, O.C.G.A. § 26-2-20 et. seq., as well as the Controlled Substances Act, 21 U.S.C. § 841(a).

233.   Defendants' unwashed blue poppy seeds exposed Plaintiff, Todd Eugene Shirley, to opiate alkaloids.  As a direct and proximate result of the acts and omissions and negligence of each Defendant, Todd Eugene Shirley suffered injury and died.

234.   At all times relevant hereto, each Defendant knew, or should have known that its products would be used without inspection for defects and that any such inspection would not have advised Plaintiff of the fact that the opiate alkaloids contained in such products could cause serious bodily injury and/or death including, without limitation, when used in making Poppy Seed Tea.

235.    At all times relevant to this action, Plaintiff was not apprised of, and did not contemplate, the danger of suffering serious bodily injury or death as a result of consuming Defendants' unwashed blue poppy seeds including, without limitation when used in making Poppy Seed Tea.

236.   At all times relevant hereto each Defendant was in the business of selling, supplying, distributing, and/or marketing unwashed blue poppy seeds that contained opiate alkaloids.  Each Defendant knew that Plaintiff and others similarly situated, would consume opiate alkaloids contained in or from their products and such opiate alkaloids would be create an

unreasonable risk of harm.  Each Defendant knew, or should have known, that Plaintiff, or others similarly situated, would be in danger of serious bodily injury and/or death.

237.   Defendants' unwashed blue poppy seeds were, at all times relevant to this action, being used in the manner in which the Defendants intended the products to be used and/or in a manner that was reasonably foreseeable to Defendants.

238.    Defendants' products failed to perform as safely as Plaintiff and others similarly situated expected they would, in that the products caused Plaintiff and others to develop serious bodily injury and die.

239.    Safer alternatives were available. As discussed, above, three of the many safer alternative designs that were available include: washed poppy seeds, herbal teas, and FDA approved medications.  At all times relevant, it was feasible for each Defendant to have:

  a. further tested their products to appreciate and eliminate any danger associated with their use;

  b. designed a safer product;

  c. adequately warned Plaintiff of the dangers associated with their products; and/or

  d. substituted washed poppy seeds, or safer alternative products, or products designed to be more safely used, where applicable.

240.   Defendants sold, supplied, distributed, and/or marketed unwashed blue poppy seeds that were contaminated and/or adulterated with an unsafe, unknown, and unreasonably dangerous level of morphine and codeine.  As a result of the contamination and/or adulteration, the unwashed blue poppy seeds were unfit for human consumption, thus defective, and unreasonably dangerous as supplied, distributed, marketed, and sold.

241.   Defendants knew or in exercising reasonable care should have known that:

a.      Defendants' unwashed blue poppy seeds were contaminated and/or adulterated with an unsafe, unknown, and unreasonably dangerous level of morphine and codeine at the time they left Defendants' control;

b.      Defendants' unwashed blue poppy seeds contained no warnings and/or inadequate warnings about their morphine or codeine content, the dangers of consuming them, and/or the dangers of their reasonably foreseeable uses and/or misuses;

c.      Defendants' unwashed poppy seeds and other unwashed poppy seeds available in the U.S. market were being marketed for use in Poppy Seed Tea;

d.      Defendants' unwashed poppy seeds contained no warnings and/or inadequate warnings about using them in Poppy Seed Tea;

e.      Consuming Defendants' unwashed blue poppy seeds, including consuming Poppy Seed Tea made from them, was likely to injure or kill its users; and

f.      The potential safety risks created by the defects in Defendants' unwashed blue poppy seeds, their marketing, and their lack of adequate warnings presented a substantial danger to people consuming or using Defendants' poppy seeds in their reasonably foreseeable uses and/or misuses, including serious bodily injury, morphine intoxication, and death.

242.   Defendants owed the following duties to all persons who consumed and/or used their poppy seeds, including Todd Eugene Shirley:

a.      To sell, supply, distribute, and/or market food products that were safe to consume and/or use, including their reasonably foreseeable uses and/or misuses; that were not contaminated or adulterated with morphine or codeine; and that were not in violation

of applicable local, state, and federal food safety or controlled substance laws, statutes, regulations, codes, or provisions.

b. To comply with all applicable local, state, and federal food safety or controlled substance laws, statutes, regulations, codes, or provisions that pertained or applied to the selling, supplying, distributing, and/or marketing of their food products.

c. To maintain their premises in a sanitary and safe condition so that the poppy seeds they sold, supplied, distributed, and/or marketed would not become contaminated or adulterated with morphine or codeine.

d. To use reasonable care in the selling, supplying, distributing, and/or marketing of their poppy seeds to prevent contamination or adulteration with morphine or codeine.

e. To use ordinary care in the design of a product, selection of materials used in their product, and assembly of a product in order to protect users of the product from unreasonable risk of harm.

f. To use ordinary care to inspect their product in order to protect users of the product from unreasonable risk of harm.

g. To give an adequate warning of dangers inherent in the product.

h. To give an adequate warning of the dangers in the reasonably foreseeable use and/or misuse of the product.

i. To give reasonable and adequate instructions with respect to the conditions and methods of a product's safe use when danger is reasonably foreseeable in its use and/or misuse.

j.      To use ordinary care to sell wholesome products packed by reliable sellers, suppliers, distributors, and marketers and without impurities that are reasonably discoverable.

k.      To not sell food that has been adulterated or contaminated rendering it injurious to the health of consumers.

243.    Defendants breached each of these duties.

244.    In addition, Defendants breached the duties owed to their customers and/or users of their poppy seeds by committing the following acts and omissions:

a.      Failing to warn that Defendants' unwashed blue poppy seeds contained morphine or codeine in unsafe, unknown, and unreasonably dangerous levels;

b.      Failing to warn that consuming Defendants' unwashed blue poppy seeds could cause serious bodily injury, morphine intoxication, and/or death;

c.      Failing to warn that consuming Poppy Seed Tea made from Defendants' unwashed blue poppy seeds could cause serious bodily injury, morphine intoxication, and/or death;

d.      Failing to use ordinary care in the selection of materials used in the poppy seeds by selecting materials containing an unsafe and unreasonable content of morphine and codeine;

e.      Failing to use ordinary care in the design and marketing of the poppy seeds by marketing and using seeds containing an unsafe and unreasonable content of morphine and codeine;

f.      Failing to use ordinary care in the testing and inspection of the poppy seeds by allowing seeds to be sold with an unsafe, unknown, and unreasonable content of morphine and codeine;

g.      Failing to use ordinary care in the packaging and marketing of the poppy seeds by promoting seeds with an unsafe, unknown, and unreasonable morphine and codeine content without any warnings and/or adequate warnings on the packaging or marketing;

h.      Selling a product with unsafe impurities and unreasonable, unknown, and unsafe morphine and codeine content that were reasonably discoverable by the exercise of reasonable care;

i.      Supplying a product containing Schedule II narcotics, especially in such unsafe levels, without proper authorization;

j.      Violating 21 U.S.C. § 342(a)(1) and (4);

k.      Violating 21 U.S.C. § 343(a), (i), and (s);

l.      Violating 21 U.S.C. § 342(f) and (g);

m.      Violating Georgia Food Act, O.C.G.A. § 26-2-20 et. seq.;

n.      Marketing poppy seeds for pain cessation or otherwise making medical claims for an unapproved drug, supplanting approved and effective treatments, and posing safety risks; and

o.      Selling poppy seeds containing Schedule II narcotics in violation of 21 U.S.C. § 841(a).

245.    Had Defendants properly performed their duties, that would have prevented or eliminated the risk that Defendants' poppy seeds would be contaminated or adulterated with

morphine or codeine or any other dangerous substance at the time the products left Defendants' control, thus preventing injury to consumers and/or users of their poppy seeds, including Todd Eugene Shirley.

246.    If Defendants had fulfilled their duties, Todd Eugene Shirley would not have died as a result of his consumption of the Poppy Seed Tea made from the poppy seeds. The above breaches of care by Defendants were the proximate cause of  Plaintiff's death. Upon information and belief, Plaintiff relied upon the marketing of the poppy seeds by Defendants, and the lack of warnings and instructions on safe levels of consumption, when using the poppy seeds. Such reliance contributed and caused his death from the poppy seeds. Upon information and belief, Defendants knew or should have known that the poppy seeds contained dangerously high opiate levels. Defendants breached this duty,

247.    Defendants were negligent, grossly negligent, and/or reckless in the sale, supply, distribution, and marketing (i.e., inadequate warnings) of their unwashed blue poppy seeds.

248.    Each of Defendants' acts or omissions was a substantial factor in and direct, proximate, and legal cause of Todd Eugene Shirley 's death and Plaintiffs' injuries.  Todd Eugene Shirley 's death and Plaintiffs' injuries would not have occurred but for Defendants' negligence.

249.    Defendants' negligent, grossly negligent, willful, wanton and reckless conduct, as described herein, was the direct and proximate cause of the Plaintiff's wrongful death.

250.    Plaintiffs are entitled to recover damages against each Defendant for their individual and their collective acts of negligence which contributed in causing the injuries and damages incurred by Plaintiffs, in an amount to be proven at trial.

## CAUSE 6:    FRAUDULENT ASSET TRANSFER

251.    Plaintiffs reallege and incorporate the above allegations as though fully set forth

herein.

252.   On or before May 3, 2019, Brachel Marketing, LLC dba Lone Goose Bakery, Brandon McCarthy, and/or Rachel McCarthy learned that: (1) a woman in Utah [Addie Kofford] died after consuming poppy seed tea, (2) a man in Georgia, Todd Shirley, died after consuming poppy seed tea, and (3) Lone Goose Bakery's unwashed Blue Bird Poppy Seeds were found at the scenes of their deaths.

253.   Seven days later, on or about May 10, 2019, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy transferred assets to the Rachel C. McCarthy Trust, including without limitation real property located at 1002 East 20th Street, Tulsa, OK, 74120.

254.   Within months, beginning on or about August 12, 2020, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy began transferring assets to Brachel Real Estate, LLC, including without limitation real property located 1609 South Boston Avenue, Tulsa, OK 74119 and commercial property located in Tula County, Oklahoma, Parcel # 25000-92-12-07910, Subdivision: MAPLE PARK ADDN, Legal: LT 4 BLK 11, Section: 12 Township: 19 Range: 12.

255.   Upon information and belief, on or about October 16, 2020, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy began transferring assets to 1519 Brachel Real Estate, LLC.

256.   These asset transfers are voidable under the Uniform Voidable Transactions Act, Georgia Uniform Voidable Transactions Act,[4] and the Oklahoma Fraudulent Transfer Act.[5]

257.   At the time that Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy began transferring assets, Defendants were well aware that their Lone Goose Bakery Blue Bird Poppy Seeds had been implicated in the morphine intoxication deaths of two people,

---

[4] O.C.G.A. § 18-2-70.
[5] 24 Ok. St. §§ 112-123.

Todd Eugene Shirley in Georgia and a woman in Utah [Addie Kofford, Deceased].

258.    These asset transfers were fraudulent as to Todd Eugene Shirley  and his heirs, because:

        a.    Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy made these transfers with actual intent to hinder, delay, or defraud Todd Eugene Shirley  and his heirs; and/or

        b.    Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy made these transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation and Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy:

            1)    Were engaged or were about to engage in a business or a transaction for which the remaining assets of Defendants were unreasonably small in relation to the business or transaction, or

            2)    Intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

259.    Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy's actual intent is clear from the fact that, upon information and belief:

        a.    The transfers were to insiders;

        b.    Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy retained possession or control of the property transferred after the transfers;

        c.    Before the transfers were made, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy were aware that they could be sued by the heirs of Todd Shirley in Georgia and the heirs of the Utah woman [Addie Kofford, Deceased] who died from morphine

intoxication after drinking Poppy Seed Tea, where Lone Goose Bakery's Blue Bird Poppy Seeds were found at the scenes of their death;

d.      The transfers were of substantially all of Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy's assets;

e.      Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy removed or concealed assets;

f.      The value of the consideration received by Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy was not reasonably equivalent to the value of the assets transferred;

g.      Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy were insolvent (within the meaning of the Uniform Fraudulent Transfer Act and/or Uniform Voidable Transactions Act) or became insolvent shortly after the transfers were made;

h.      The transfers occurred shortly before or shortly after a substantial debt was incurred; and/or

i.      Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy transferred the essential assets of the business to a lienor who transferred the assets to an insider of Defendants.

260.    These asset transfers were fraudulent as to Plaintiffs because Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy made the transfers without receiving reasonably equivalent value in exchange for the transfers and Defendants were insolvent (within the meaning of the Uniform Fraudulent Transfer Act and/or Uniform Voidable Transactions Act) at that time or they became insolvent as a result of the transfers or obligation.

261.    Defendants' acts and omissions in fraudulently transferring these assets were a

substantial factor in and proximately, directly, and legally caused Plaintiffs to suffer serious injuries and damages.

262.   In response to Defendants' fraudulent asset transfers, Plaintiffs seek the following relief:

        a.   Avoidance of any and all fraudulent transfers to the extent necessary to satisfy Plaintiffs' claims;

        b.   An attachment or other provisional remedy against any and all assets transferred or other property of the transferees as provided for by law;

        c.   An injunction against further disposition by Defendants or a transferee, or both, of any and all assets transferred or of other property;

        d.   Appointment of a receiver to take charge of any and all assets transferred or of other property of the transferees;

        e.   Once Plaintiffs obtain judgment on a claim or claims against Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy, that the court levy execution on any and all assets transferred or their proceeds;

        f.   Judgment for the value of any and all assets transferred;

        g.   An amount of money necessary to satisfy creditors' claims; and/or

        h.   Any other relief the circumstances may require.

263.   Defendants' fraudulent asset transfers, as described herein, directly and proximately caused injury to Plaintiffs.

264.   WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 7:   PUNITIVE DAMAGES

265.   Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

266.   The conduct of each Defendant, as set forth above, showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.  Accordingly, punitive damages should be imposed against each Defendant pursuant to O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each Defendant from repeating or continuing such unlawful conduct.

## COUNT 8:  WRONGFUL DEATH

267.   Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

268.   Todd Eugene Shirley died on March 9, 2019, from complications caused by consumption of Poppy Seed Tea made from Defendants' unwashed blue poppy seeds.  At the time of his death, Todd Eugene Shirley was 46  years of age and had a reasonable life expectancy of at least 34.3 more years of life.

269.   As Todd Eugene Shirley's surviving parents, Plaintiffs Linda Sue Golden and Marion Eugene Shirley are the statutory beneficiaries authorized under O.C.G.A. §51-4-2(a) to maintain the present action against the Defendants for the homicide and wrongful death of Todd Eugene Shirley, deceased.

270.   As a direct and proximate result of the homicide and wrongful death of Todd Eugene Shirley, as caused by the acts and omissions of each Defendant, Plaintiffs Linda Sue Golden and Marion Eugene Shirley have been forever deprived of Todd Eugene Shirley's love, aid, support, services, and companionship.  By reason of the negligent and intentional acts of the

Defendants, which resulted in the homicide and premature death of Todd Eugene Shirley, Plaintiffs are entitled to recover from the Defendants a sum equal to the full value of Todd Eugene Shirley's life in an amount to be proven at trial.

**B.     NEW JERSEY CAUSES OF ACTION**

### COUNT 1:    PRODUCTS LIABILITY
(N.J. Products Liability Act – <u>N.J.S.A.</u> 2A:-58C-1 *et seq.*)

271.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

272.    Defendants are liable under a theory of strict products liability as set forth in <u>N.J.S.A.</u> 2A:58C-1, et seq.

273.    At all relevant times, Defendants sold, supplied, distributed, marketed, and/or otherwise placed into interstate unwashed poppy seeds contaminated with opiate alkaloids.

274.    At all relevant times, Defendants were engaged in the business of selling, supplying, distributing, marketing, and otherwise introducing into the stream of interstate commerce the unwashed poppy seeds.

275.    At all relevant times, unwashed poppy seeds, sold, supplied, distributed, and marketed by Defendants, were defective and unreasonably dangerous because, despite the Defendants' knowledge that the unwashed poppy seeds contained opiate alkaloids and were unreasonably dangerous for their reasonably foreseeable uses and/or misuses, Defendants failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk opiate intoxication, injury, or death from consuming their unwashed poppy seeds and/or using their unwashed poppy seeds to make Poppy Seed Tea.

276.    Had Plaintiff received warning or instruction regarding the dangers of using unwashed poppy seeds to make Poppy Seed Tea, Plaintiff would not have made or consumed

Poppy Seed Tea.

277.   Due to the absence of any warning or instruction by the Defendants as to the significant health and safety risks posed by the unwashed poppy seeds as described herein, Plaintiff was unaware that the unwashed poppy seeds created a risk of injury or death when consumed in and/or used to make Poppy Seed Tea, as this danger was not known to the general public.

278.   Defendants sold, supplied, distributed, and marketed the adulterated food product, unwashed poppy seeds, that caused Todd Eugene Shirley's injury and death.

279.   Defendants are in the business of selling, supplying, distributing, and marketing unwashed poppy seed food products.

280.   Unwashed poppy seeds contaminated with opiate alkaloids are an adulterated food product that is unfit, unsuitable, and unreasonably dangerous for its intended and ordinary and expected purpose of human consumption because opiate alkaloids are dangerous to human health.

281.   The adulterated food product, unwashed poppy seeds, that Defendants sold, supplied, distributed, and marketed was defective and unreasonably dangerous for its intended and ordinary and expected purpose because it was contaminated with opiate alkaloids when it left Defendants' control.

282.   Because the adulterated food product, unwashed poppy seeds, was contaminated with opiate alkaloids, it was in a condition that consumers had not contemplated, including Todd Eugene Shirley, and it was in a condition that rendered it unreasonably dangerous for its intended and ordinary and expected and reasonably foreseeable purpose, use, and misuses.

283.   The adulterated food product, unwashed poppy seeds reached Plaintiff without substantial change in the condition in which it was sold by Defendants (i.e., it was contaminated with opiate alkaloids). Plaintiff used the product in the manner expected and intended and

reasonably foreseeable, including when he consumed it and used it to make Poppy Seed Tea.

284.    An ordinarily prudent seller, supplier, distributor, and marketer of food products, being fully aware of the risks of unwashed poppy seeds and opiate alkaloids, would not place unwashed poppy seeds contaminated with opiate alkaloids on the market.

285.    Defendants adulterated food product, unwashed poppy seeds contaminated with opiate alkaloids, directly and proximately caused Todd Shirley's injury and death.

286.    Todd Shirley was a reasonably foreseeable and intended user of Defendants' defective food product, unwashed poppy seeds.

287.    The unwashed poppy seeds had a manufacturing defect because they were contaminated with opiate alkaloids.

288.    The unwashed poppy seeds had a design defect because they were contaminated with opiate alkaloids.

289.    The unwashed poppy seeds had a defect because they did not contain (a) any warnings regarding opiate alkaloids, opiate intoxication, injury, or death, (b) did not contain any warnings or instructions regarding Poppy Seed Tea; (c) did not contain any warnings or instructions regarding the risk of opiate intoxication, injury or death from consuming unwashed poppy seeds; and (d) did not contain any warnings or instructions regarding the risk of Opiate intoxication, injury or death from consuming Poppy Seed Tea made with unwashed poppy seeds.

290.    Defendants had reason to know, and in fact knew, that unwashed poppy seeds contained opiate alkaloids that posed an unreasonable risk of harm to consumers.

291.    Defendants had reason to know, and in fact knew, that unwashed poppy seeds contained opiate alkaloids that posed an unreasonable risk of harm to consumers when used to make Poppy Seed tea.

292.     Defendants had reason to know, and in fact knew, that the unwashed poppy seeds they sold, supplied, distributed, and marketed likely were, and should have been expected to be, and actually were contaminated with opiate alkaloids.

293.     Defendants had reason to know, and in fact knew, that Poppy Seed Tea made from unwashed poppy seeds had been attributed as a cause of death in multiple consumers of unwashed poppy seeds and Poppy Seed Tea.

294.     As a result of the knowledge alleged in the foregoing paragraphs, Defendants owed a duty to Plaintiff, and other consumers similarly situated, to use reasonable care in the sale, supply distribution, and marketing of the unwashed poppy seeds that caused Plaintiffs' injuries, which duties of care Defendants breached. Defendants owed a duty to consumers, including Plaintiffs, to abide by all applicable state and federal statutes, laws, and regulations regarding food safety.

295.     Defendants had a duty to comply with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*., and all of the rules, regulations, and policies promulgated pursuant to it. Defendants did not comply with these duties in its selling, supplying distributing, and marketing into interstate commerce of the unwashed poppy seeds to which Plaintiff was exposed.

296.     In particular, the unwashed poppy seeds that Defendants sold, supplied, distributed, and marketed into interstate commerce was adulterated under 21 U.S.C. § 301 *et seq*., 21 C.F.R. Pt. 110, 21 C.F.R. Pt. 117, and 21 U.S.C. § 342, in violation of 21 U.S.C. § 331.

297.     In violation of 21 U.S.C. § 350g, Defendants failed to identify, implement, and effectively monitor appropriate, adequate, and effective preventative controls to significantly minimize or prevent the occurrence of hazards that could affect the food it sold, supplied, distributed, and marketed and to assure that such food was not adulterated.

298.     Defendants' violations of the Federal Food, Drug, and Cosmetic Act include

violations of the regulations adopted by the FDA. Among other violations, Defendants failed to implement and/or utilize adequate, appropriate, and effective processes and quality controls in violation of 21 C.F.R. § 110.80 and 21 C.F.R. § 117.80; failed to implement adequate, appropriate, and effective preventative controls in violation of 21 C.F.R. § 117.135; failed to verify that preventative controls were consistently implemented and were effectively and significantly minimizing or preventing the hazards in violation of 21 C.F.R. § 117.165; and failed to implement a supply-chain program that assured that a hazard requiring a supply-chain applied control had been significantly minimized or prevented in violation of 21 C.F.R. § 117.410.

299.    Defendants' non-compliance with 21 U.S.C. § 350g and 21 C.F.R. Pt. 117, Subparts C and G were violations of 21 U.S.C. § 331(uu).

300.    At all times relevant to this action, Defendants also had a duty to comply with N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles").

301.    Defendants manufactured, distributed, and sold, and for distribution or sale, food which was adulterated under N.J.S.A. 24:5-8 in violation of N.J.S.A. 24:5-1.

302.    The fact that Defendants failed to comply with these statutes, laws, and regulations regarding food safety is evidence that Defendants breached its duty of reasonable care and is negligence per se.

303.    Plaintiff was in the class of people intended to be protected by these statutes, laws, and regulations regarding food safety. Failure by Defendants to comply with these statutes, laws, and regulations was a direct and proximate cause of Plaintiffs' injuries.

304.    Defendants' unwashed blue poppy seeds suffered from design and/or manufacturing defects sufficient to cause each Defendant to be liable to Plaintiff under theories of product liability and strict liability.  The subject product was defective, inter alia, the product

suffered from a design defect, and/or a manufacturing defect.

305.    The subject product possessed latent characteristics, including latent design defects and/or latent manufacturing defects, that existed at the time the subject product was sold and which continued to exist unknown to Plaintiff's Decedent until the product caused injury and death.

306.    From the time the product was sold and delivered, and throughout its use by Plaintiff's Decedent, the product was being used by Plaintiff's Decedent in the manner intended and/or reasonably foreseeable by the Defendant without any substantial change affecting its condition.

307.    From the time the Defendant's product was sold and delivered, and throughout its use by Plaintiff, the product was being used by Plaintiff's Decedent in the manner intended and/or reasonably foreseeable by the Defendant without any alteration.

308.    Each Defendant knew that the product would be used without inspection for defects, and by placing them on the market represented that the product could be safely ingested, without causing injury or death.

309.    Plaintiff's Decedent was unaware of the defects in Defendant's product.

310.    The existing manufacturing defects and/or design defects in the subject product were the proximate cause of Plaintiff's Decedent's injury and death, as well as all damages sought by Plaintiff in this action.

311.    Defendants were engaged in the business of selling, supplying, distributing, and/or marketing food products, specifically unwashed blue poppy seeds.

312.    Defendants' unwashed blue poppy seeds were sold for use as a food product.

313.    Defendants' unwashed blue poppy seeds were intended for human consumption.

314.    The ordinary, intended, expected, and reasonably foreseeable uses and/or misuses

of Defendants' unwashed blue poppy seeds included making Poppy Seed Tea.

315.   Defendants' unwashed blue poppy seeds contained design defects, manufacturing defects, marketing defects, and defectively inadequate warnings.  Each of these defects rendered Defendants' unwashed blue poppy seeds unreasonably dangerous.

316.   It was reasonably foreseeable to Defendants that consumers would use Defendants' unwashed blue poppy seeds to make Poppy Seed Tea.

317.   As sellers, suppliers, distributors, and/or marketers, Defendants had a duty to not sell, supply, distribute, and/or market a product that was defective or unreasonably dangerous.

318.   Defendants' unwashed blue poppy seeds reached the user or consumer without substantial change in the condition which they were sold.

319.   Defendants' unwashed blue poppy seeds were unreasonably dangerous for their ordinary, intended, expected, and reasonably foreseeable uses and/or misuses.

320.   Defendants' unwashed blue poppy seeds were dangerous to an extent beyond which would be contemplated by the ordinary buyer, consumer, or user of that product.

321.   Defendants' unwashed blue poppy seeds were unreasonably dangerous from the time they left Defendants' control because they contained sufficient opiate alkaloids (morphine and codeine) to cause serious bodily injury, morphine intoxication, and death, even based upon a reasonable and foreseeable level of consumption.  An ordinary consumer of the seeds would not expect them to contain sufficient quantities of opiate alkaloids (morphine and codeine) to cause serious bodily injury, morphine intoxication, and death when consumed.

322.   Defendants' unwashed blue poppy seeds were unreasonably dangerous because an ordinary consumer of the seeds would not expect them to contain sufficient quantities of opiate alkaloids (morphine and codeine) to cause serious bodily injury, morphine intoxication, and death

when used for their intended and reasonably foreseeable use and/or misuse, making poppy seed tea.

323.    Defendants' unwashed blue poppy seeds were unreasonably dangerous because they:

a.    Were adulterated foods under 21 U.S.C. § 342(a)(1) and the N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles");

b.    Contained quantities of opiate alkaloids that render the food injurious to health, as evidenced by the numerous cases of overdose and death reported to date;

c.    Were adulterated foods under the Georgia Food Act, N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles"), because they contained poisonous or deleterious substance(s) which rendered them injurious to health;

d.    Were adulterated foods under 21 U.S.C. § 342(a)(4) and the N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles") because they have been prepared, packed, or held under insanitary conditions whereby they were rendered injurious to human health;

e.    Were misbranded under 21 U.S.C. § 343(a) and (i) to the extent that the labeling of the products failed to include poppy straw and milky sap in addition to poppy seeds in the ingredients list;

f.    Were adulterated dietary supplements under 21 U.S.C. § 342(f) and the N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles")  because they contain dietary ingredients (poppy straw and sap) that present a significant and unreasonable risk of injury;

g.      Were adulterated dietary supplements under 21 U.S.C. § 342(g) and N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles"),  to the extent that they have been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations;

h.      Were misbranded dietary supplements under 21 U.S.C. § 343(s) to the extent that the labeling of the products failed to include poppy straw and milky sap in addition to poppy seeds in the ingredient list;

i.      Contained sufficient opiate alkaloids  to render them injurious to the health of consumers;

j.      Were unapproved drugs that supplant effective approved treatments and pose safety risks; and

k.      Contained poppy straw, the knowing or intentional distribution of which is a violation of the Controlled Substances Act, 21 U.S.C. § 841(a).

324.    Safer alternative designs were available to Defendants that were technically and economically feasible under the circumstances.

325.    Defendants sold, supplied, distributed, and marketed the adulterated food that injured Todd Eugene Shirley .

326.    At the time Defendants sold their unwashed blue poppy seeds, the unwashed blue poppy seeds were defective and unreasonably dangerous for their ordinary, expected, intended, and reasonably foreseeable use and/or misuse because they contained sufficient opiate alkaloids (morphine and codeine) to render them injurious to the health of consumers.

327.    The adulterated food product that Defendants sold, distributed, supplied, and marketed was delivered to Todd Eugene Shirley  without any change in its defective condition.

328.   The adulterated food product that Defendants sold, distributed, supplied, and marketed was used and consumed by Todd Eugene Shirley  in its ordinary, expected, intended, and reasonably foreseeable use.

329.   Todd Eugene Shirley  used the poppy seeds in a reasonable and foreseeable manner when he made Poppy Seed Tea. Upon information and belief, Defendants knew or should have known that consumers, like Plaintiff, would use the poppy seeds to make tea based on publicly available information like that on PoppySeedTeaRecipe.com related to the unwashed blue poppy seeds.

330.   The defective and unreasonably dangerous conditions of Defendants' unwashed blue poppy seed tea were a substantial factor, as well as the direct, proximate and legal cause of Todd Eugene Shirley 's death.

331.   Todd Eugene Shirley 's death would not have occurred but for the defective and unreasonably dangerous condition of Defendants' unwashed blue poppy seeds.

332.   The direct, proximate, and legal cause of  Plaintiff's death was the consumption of the Poppy Seed Tea made from the defective and unreasonably dangerous poppy seeds supplied by Defendants.

333.   Alternative safer designs were available to and economically feasible to Defendants when they sold, distributed, supplied, and marketed their unwashed blue poppy seeds.  The cost of any such alternative design was insignificant compared to the seriousness and severity of the harm that could result and did result to Todd Eugene Shirley.  The cost of the alternative design was a cost that the market and consumers could bear, and any potential cost was far outweighed by the known benefits of such alternative design and marketing.

334.   Defendants are strictly liable to Plaintiffs for the harm proximately caused by the

sale, distribution, supply, and marketing of an unreasonably dangerous and defective product, unwashed blue poppy seeds.

335.    Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product, unwashed poppy seeds, that Defendants sold, supplied, distributed, and marketed.

336.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 2:    BREACH OF WARRANTY

337.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

338.    Defendants expressly or impliedly warranted that their unwashed poppy seed food products, which they sold, supplied, distributed, marketed, or otherwise placed in the stream of commerce, were merchantable, reasonably fit for use and safe for their intended purposes.

339.    Defendants breached said warranties in that their unwashed poppy seed food products were defective, ultra-hazardous, dangerous, unfit for use, unfit for human consumption, not merchantable and not safe for their intended, ordinary and foreseeable use and purpose.

340.    Defendants are liable to Plaintiff for breaching express and implied warranties that they made regarding their adulterated product, unwashed blue poppy seeds, that Plaintiff purchased and consumed.  These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use.  Specifically, Defendants expressly warranted, through their sale of food to the public and by statement and conduct of their employees and agents, that the food they prepared and sold was fit for human consumption and not otherwise adulterated

or injurious to health.

341.     Plaintiff alleges that the opiate alkaloid-contaminated food that Defendants sold, supplied, distributed, and/or marketed, and which Plaintiff purchased and consumed, would not pass without exception in the trade and was, therefore, in breach of the implied warranty of merchantability.

342.     Plaintiff alleges that the opiate alkaloid-contaminated food that Defendants sold, supplied, distributed, and/or marketed, and which Plaintiff purchased and consumed, was not fit for the uses and purposes intended, i.e. human consumption, and that this product was, therefore, in breach of the implied warranty of fitness for its intended use.

343.     Defendants impliedly and expressly warranted that their unwashed blue poppy seeds were merchantable, fit for consumption, and safe for human consumption. Defendants further warranted that their unwashed blue poppy seeds were properly packaged and labeled.

344.     Defendants breached these warranties by selling, supplying, distributing, and/or marketing unwashed blue poppy seeds with unsafe, unknown, and unreasonably levels of opiate alkaloids (morphine and codeine) sufficient to cause death by "morphine intoxication."

345.     Defendants breached these warranties by failing to properly label their unwashed blue poppy seeds with proper instructions and warnings.  Upon information and belief, Todd Eugene Shirley  relied on the lack of warnings and instructions when he used Defendants' unwashed blue poppy seeds.  This reliance was a substantial factor and direct, proximate, and legal cause of his death.

346.     Defendants unwashed blue poppy seeds violated: 21 U.S.C. § 342(a)(1) and (4); 21 U.S.C. § 343(a), (i), and (s); 21 U.S.C. § 342(f) and (g); N.J.S.A 24:5-1 et seq. ("Sale, distribution or manufacture of adulterated or misbranded articles"); and 21 U.S.C. § 841(a).

347.    Defendants' breaches of warranty caused Todd Eugene Shirley 's death.

348.    Defendants knew or had reason to know of the particular purposes and uses for which their unwashed blue poppy seeds were intended, required, and were to be used, as well as reasonably foreseeable uses and misuses.  Defendants knew or had reason to know that purchasers, consumers, and users would reasonably rely upon Defendants' skill or judgment in selling, distributing, supplying, marketing and furnishing goods suitable for such purposes and reasonably foreseeable uses and/or misuses.  Defendants knew or had reason to know that purchasers, consumers, and users would rely on Defendants to disclose the risks and dangers of Defendants' unwashed blue poppy seeds for such purposes and reasonably foreseeable uses and/or misuses.

349.    Todd Eugene Shirley had no knowledge of the falsity or incompleteness of Defendants' statements and representations concerning Defendants' unwashed blue poppy seeds. Defendants had sole access to the material facts concerning defects in their unwashed blue poppy seeds and knew buyers, consumers, and users, such as Todd Eugene Shirley, could not have reasonably discovered such defects.

350.    Defendants' unwashed blue poppy seeds were not fit for the particular and reasonably foreseeable purposes for which they were intended and used, i.e., human consumption. Defendants' unwashed blue poppy seeds breached the implied warranty of fitness for their intended and reasonably foreseeable purposes, uses and/or misuses.

351.    At the time Defendants' unwashed blue poppy seeds were sold, distributed, supplied, and marketed, Defendants knew or reasonably should have known that they were not reasonably safe for their intended and foreseeable uses and/or misuses.

352.    At the time Defendants' unwashed blue poppy seeds were sold, supplied, distributed, and/or marketed, Defendants knew or reasonably should have known that they posed

an unreasonable risk of injury to their users.  Defendants expressly and impliedly represented and/or warranted that their unwashed blue poppy seeds were of merchantable quality and safe and fit for intended and foreseeable uses and/or misuses and did not, at any time, retract or amend such representations and warranties, nor did Defendants at any time disclose the truth known to them— that Defendants' unwashed blue poppy seeds did in fact pose an unreasonable risk of injury to their users when used in the intended and foreseeable uses and/or misuses.

353.    At the time that Todd Eugene Shirley  purchased and consumed Defendants' unwashed blue poppy seeds, Defendants' unwashed blue poppy seeds did not conform to the warranties, affirmations, and representations made by Defendants.  Defendants breached their express and implied warranties and those breaches were a direct, legal, and proximate cause of Plaintiffs' injuries and damages.

354.    The defects in Defendants' unwashed blue poppy seeds breached Defendants' implied and express warranties of merchantability and fitness for use.

355.    As a direct and proximate result of Defendants' breach of warranties, Todd Eugene Shirley suffered injury and died resulting from the ordinary and foreseeable use of Defendants' unwashed poppy seed food products.  Plaintiffs were caused to suffer the injuries, expenses and losses alleged in prior counts of this complaint.

356.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 3:    NEGLIGENCE PER SE
### (N.J.S.A. 24:5-1 *et seq.*)

357.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

358.    Defendants owed a duty to the public, including Todd Eugene Shirley, to exercise reasonable care in selling, supplying, distributing, marketing, delivering, and/or receiving in commerce their unwashed blue poppy seeds.  Defendants breached this duty (and others) by selling, supplying, distributing, marketing, delivering, and/or receiving in commerce unwashed blue poppy seeds in a negligent and unlawful manner, in violation of applicable state and federal statutes, regulations, ordinances, codes, standards, and customs.

359.    Defendants had a duty to comply with all applicable local, state and federal regulations intended to ensure the purity and safety of their food products, including, but not limited to, the requirements of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 et seq., the Controlled Substances Act, 21 U.S.C. § 841(a), and

360.    N.J.S.A. 24:5-1 et seq. ("Sale, distribution or manufacture of adulterated or misbranded articles").  Defendants' unwashed poppy seeds were adulterated under N.J.S.A. 24:5-8 in violation of N.J.S.A. 24:5-1.

361.    Defendants violated: 21 U.S.C. § 342(a)(1) and (4); 21 U.S.C. § 343(a), (i), and (s);

362.    21 U.S.C. § 342(f) and (g); 21 U.S.C. § 841(a);  and N.J.S.A. 24:5-1 et seq.

363.    Todd Eugene Shirley  was among the class of persons designed to be protected by these local, state, and federal food safety and controlled substance statutes, laws, regulations, codes, or provisions pertaining to the selling, supplying, distributing, marketing, delivering, and/or receiving in commerce of similar products.

364.    Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent per se in their selling, supplying, distributing, marketing, delivering, and/or receiving in commerce of adulterated food.

365.    Defendants' wrongful conduct included without limitation: selling, supplying,

distributing, marketing, delivering, and/or receiving in commerce unwashed blue poppy seeds with unsafe, unknown, and unreasonably levels of opiate alkaloids (morphine and codeine) sufficient to cause death by "morphine intoxication."

366.   The fact that Defendants failed to comply with these statutes, laws, and regulations regarding food safety is evidence that Defendants breached their duty of reasonable care and is negligence per se.

367.   Todd Eugene Shirley was in the class of people intended to be protected by these statutes, laws, and regulations regarding food safety. Failure by Defendants to comply with these statutes, laws, and regulations was a direct and proximate cause of Todd Eugene Shirley's injuries and death.

368.   Plaintiffs suffered injury and damages as a direct and proximate result of Defendants' acts and omissions constituting negligence per se. Todd Eugene Shirley suffered injury and death.

369.   WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the damages, punitive damages, and costs of suit as provided by law.

## COUNT 4:    NEGLIGENCE

370.   Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

371.   Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

372.   Defendants were engaged, directly or indirectly, in the selling, supplying, distributing, and marketing a food product, unwashed poppy seeds.

373.     Defendants, directly or indirectly, caused their food product, unwashed poppy seeds, to be sold to, supplied to, distributed to, marketed to, or used by Plaintiff Todd Eugene Shirley.

374.     Plaintiff Todd Eugene Shirley received a fatal dose of opiate alkaloids from consuming Defendants' unwashed poppy seed food products.

375.     As a direct and proximate result of Plaintiff Todd Eugene Shirley's exposure to opiate alkaloids from consuming Defendants' unwashed poppy seed food products, Plaintiff Todd Eugene Shirley suffered injury and died.

376.     During the time that Defendants sold, supplied, distributed, and marketed their unwashed poppy seed food products, Defendants knew, or in the exercise of reasonable care should have known, that their unwashed poppy seed food products were defective, ultra-hazardous, dangerous and otherwise highly harmful to consumers such as Plaintiff Todd Eugene Shirley.

377.     Defendants knew, or in the exercise of reasonable care should have known, that the consumption, use, and reasonably foreseeable uses and/or misuses of their unwashed poppy seed food products would cause opiate intoxication, injury, and/or death to consumers.

378.     Plaintiff did not know the nature and extent of the injury that would result from consuming Defendants' unwashed poppy seed food products.

379.     Defendants knew, or in the exercise of reasonable care should have known, that consumers such as Plaintiff Todd Eugene Shirley would consume and/or use Defendants unwashed poppy seed food products and would be exposed to dangerous and/or fatal levels of opiate intoxication, causing opiate intoxication, injury, and/or death as a result of the ordinary and foreseeable uses and/or misuses of Defendants' unwashed poppy seed food products.

380.     Despite the facts as set forth above, Defendants negligently, recklessly and

intentionally:

a.    sold, supplied, distributed, marketed or otherwise placed in the stream of commerce, unwashed poppy seed food products which Defendants knew or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to Plaintiff;

b.    failed to take reasonable precautions or exercise reasonable care to warn Plaintiff adequately of the risks, dangers and harm to which Plaintiff would be exposed by consuming, using, and/or misusing Defendants' unwashed poppy seed food products, resulting from the ordinary and foreseeable uses and/or misuses of Defendants' unwashed poppy seed food products;

c.    failed to provide information on the reasonably safe uses—and warnings against reasonably foreseeable dangerous uses and/or misuses—necessary to protect Plaintiff from being injured, poisoned, disabled, killed or otherwise harmed by consuming or using Defendants' unwashed poppy seed food products resulting from the ordinary and reasonably foreseeable uses and/or misuses of Defendants' unwashed poppy seed food products;

d.    failed to advise Plaintiff of the necessity to adopt and enforce a safe, sufficient and proper method of consuming or using Defendants' unwashed poppy seed food products so that Plaintiff would not consume dangerous or fatal doses of opiate alkaloids resulting from the ordinary and reasonably foreseeable uses and/or misuses of Defendants' unwashed poppy seed food products;

e.    ignored and suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities

concerning the risk of opiate intoxication and/or death from consumption of unwashed poppy seeds, including without limitation from consuming Poppy Seed Tea made with unwashed poppy seeds, to people such as Plaintiff and other persons similarly situated, who consumed and/or used Defendants' unwashed poppy seed food products;

f.      disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between consumption and/or use of unwashed poppy seeds and opiate intoxication and/or death;

g.      continued to sell, distribute, supply, and market unwashed poppy seed food products to Plaintiff and other persons similarly situated, to the risk of suffering opiate intoxication, injury, and/or death, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of consuming and/or using unwashed poppy seeds;

h.      failed to seek substitute materials in lieu of the use, selling, supplying, distributing, and marketing of their unwashed poppy seeds;

i.      failed to advise Plaintiff and persons similarly situated to Plaintiff who Defendants knew, or in the exercise of reasonable care should have known, would consume and/or use Defendants' unwashed poppy seed food products, to cease consuming, using, and/or misusing Defendants' unwashed poppy seed food products; and

381.    Defendants otherwise acted negligently, recklessly and with intentional disregard for the welfare of Plaintiff and persons similarly situated to Plaintiff in the selling, supplying, distributing, marketing or otherwise placing in the stream of commerce their unwashed poppy seed food products.

382.    Each Defendant had a duty to comply with all statutory and regulatory provisions

that pertained or applied to the selling, supplying, distributing, and/or marketing of the food products that injured Todd Eugene Shirley, including the applicable provisions of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 *et seq*. and the N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles"), as well as the Controlled Substances Act, 21 U.S.C. § 841(a).

383.    Defendants' unwashed blue poppy seeds exposed Plaintiff, Todd Eugene Shirley, to opiate alkaloids.  As a direct and proximate result of the acts and omissions and negligence of each Defendant, Todd Eugene Shirley suffered injury and died.

384.    At all times relevant hereto, each Defendant knew, or should have known that its products would be used without inspection for defects and that any such inspection would not have advised Plaintiff of the fact that the opiate alkaloids contained in such products could cause serious bodily injury and/or death including, without limitation, when used in making Poppy Seed Tea.

385.     At all times relevant to this action, Plaintiff was not apprised of, and did not contemplate, the danger of suffering serious bodily injury or death as a result of consuming Defendants' unwashed blue poppy seeds including, without limitation when used in making Poppy Seed Tea.

386.    At all times relevant hereto each Defendant was in the business of selling, supplying, distributing, and/or marketing unwashed blue poppy seeds that contained opiate alkaloids.  Each Defendant knew that Plaintiff and others similarly situated, would consume opiate alkaloids contained in or from their products and such opiate alkaloids would be create an unreasonable risk of harm.  Each Defendant knew, or should have known, that Plaintiff, or others similarly situated, would be in danger of serious bodily injury and/or death.

387.    Defendants' unwashed blue poppy seeds were, at all times relevant to this action,

being used in the manner in which the Defendants intended the products to be used and/or in a manner that was reasonably foreseeable to Defendants.

388.    Defendants' products failed to perform as safely as Plaintiff and others similarly situated expected they would, in that the products caused Plaintiff and others to develop serious bodily injury and die.

389.    Safer alternatives were available. As discussed, above, three of the many safer alternative designs that were available include: washed poppy seeds, herbal teas, and FDA approved medications. At all times relevant, it was feasible for each Defendant to have:

   a.    further tested their products to appreciate and eliminate any danger associated with their use;

   b.    designed a safer product;

   c.    adequately warned Plaintiff of the dangers associated with their products; and/or

   d.    substituted washed poppy seeds, or safer alternative products, or products designed to be more safely used, where applicable.

390.    Defendants sold, supplied, distributed, and/or marketed unwashed blue poppy seeds that were contaminated and/or adulterated with an unsafe, unknown, and unreasonably dangerous level of morphine and codeine.  As a result of the contamination and/or adulteration, the unwashed blue poppy seeds were unfit for human consumption, thus defective, and unreasonably dangerous as sold, supplied, distributed, and marketed.

391.    Defendants knew or in exercising reasonable care should have known that:

a.      Defendants' unwashed blue poppy seeds were contaminated and/or adulterated with an unsafe, unknown, and unreasonably dangerous level of morphine and codeine at the time they left Defendants' control;

b.      Defendants' unwashed blue poppy seeds contained no warnings and/or inadequate warnings about their morphine or codeine content, the dangers of consuming them, and/or the dangers of their reasonably foreseeable uses and/or misuses;

c.      Defendants' unwashed poppy seeds and other unwashed poppy seeds available in the U.S. market were being marketed for use in Poppy Seed Tea;

d.      Defendants' unwashed poppy seeds contained no warnings and/or inadequate warnings about using them in Poppy Seed Tea;

e.      Consuming Defendants' unwashed blue poppy seeds, including consuming Poppy Seed Tea made from them, was likely to injure or kill its users; and

f.      The potential safety risks created by the defects in Defendants' unwashed blue poppy seeds, their marketing, and their lack of adequate warnings presented a substantial danger to people consuming or using Defendants' poppy seeds in their reasonably foreseeable uses and/or misuses, including serious bodily injury, morphine intoxication, and death.

392.   Defendants owed the following duties to all persons who consumed and/or used their poppy seeds, including Todd Eugene Shirley:

a.      To sell, supply, distribute, and/or market food products that were safe to consume and/or use, including their reasonably foreseeable uses and/or misuses; that were not contaminated or adulterated with morphine or codeine; and that were not in violation

of applicable local, state, and federal food safety or controlled substance laws, statutes, regulations, codes, or provisions.

b.      To comply with all applicable local, state, and federal food safety or controlled substance laws, statutes, regulations, codes, or provisions that pertained or applied to the selling, supplying, distributing, and/or marketing of their food products.

c.      To maintain their premises in a sanitary and safe condition so that the poppy seeds they sold, supplied, distributed, and/or marketed would not become contaminated or adulterated with morphine or codeine.

d.      To  use reasonable care in the selling, supplying, distributing, and/or marketing of their poppy seeds to prevent contamination or adulteration with morphine or codeine.

e.      To use ordinary care in the design of a product, selection of materials used in their product, and assembly of a product in order to protect users of the product from unreasonable risk of harm.

f.      To use ordinary care to inspect their product in order to protect users of the product from unreasonable risk of harm.

g.      To give an adequate warning of dangers inherent in the product.

h.      To give an adequate warning of the dangers in the reasonably foreseeable use and/or misuse of the product.

i.      To give reasonable and adequate instructions with respect to the conditions and methods of a product's safe use when danger is reasonably foreseeable in its use and/or misuse.

j.      To use ordinary care to sell wholesome products packed by reliable sellers, suppliers, distributors, and marketers and without impurities that are reasonably discoverable.

k.      To not sell food that has been adulterated or contaminated rendering it injurious to the health of consumers.

393.    Defendants breached each of these duties.

394.    In addition, Defendants breached the duties owed to their customers and/or users of their poppy seeds by committing the following acts and omissions:

a.      Failing to warn that Defendants' unwashed blue poppy seeds contained morphine or codeine in unsafe, unknown, and unreasonably dangerous levels;

b.      Failing to warn that consuming Defendants' unwashed blue poppy seeds could cause serious bodily injury, morphine intoxication, and/or death;

c.      Failing to warn that consuming Poppy Seed Tea made from Defendants' unwashed blue poppy seeds could cause serious bodily injury, morphine intoxication, and/or death;

d.      Failing to use ordinary care in the selection of materials used in the poppy seeds by selecting materials containing an unsafe and unreasonable content of morphine and codeine;

e.      Failing to use ordinary care in the design and marketing of the poppy seeds by marketing and using seeds containing an unsafe and unreasonable content of morphine and codeine;

f.      Failing to use ordinary care in the assembly and sale of the poppy seeds by selling the seeds in such a manner as to allow or create an unsafe, unknown, and unreasonable content of morphine and codeine;

g.      Failing to use ordinary care in the testing and inspection of the poppy seeds by allowing seeds to be sold with an unsafe, unknown, and unreasonable content of morphine and codeine;

h.      Failing to use ordinary care in the packaging and marketing of the poppy seeds by promoting seeds with an unsafe, unknown, and unreasonable morphine and codeine content without any warnings and/or adequate warnings on the packaging or marketing;

i.      Selling a product with unsafe impurities and unreasonable, unknown, and unsafe morphine and codeine content that were reasonably discoverable by the exercise of reasonable care;

j.      Supplying a product containing Schedule II narcotics, especially in such unsafe levels, without proper authorization;

k.      Violating 21 U.S.C. § 342(a)(1) and (4);

l.      Violating 21 U.S.C. § 343(a), (i), and (s);

m.      Violating 21 U.S.C. § 342(f) and (g);

n.      Violating N.J.S.A. 24:5-1 ("Sale, distribution or manufacture of adulterated or misbranded articles");

o.      Marketing poppy seeds for pain cessation or otherwise making medical claims for an unapproved drug, supplanting approved and effective treatments, and posing safety risks; and

p.      Selling poppy seeds containing Schedule II narcotics in violation of 21 U.S.C. § 841(a).

395.    Had Defendants properly performed their duties, that would have prevented or eliminated the risk that Defendants' poppy seeds would be contaminated or adulterated with morphine or codeine or any other dangerous substance at the time the products left Defendants' control, thus preventing injury to consumers and/or users of their poppy seeds, including Todd Eugene Shirley.

396.    If Defendants had fulfilled their duties, Todd Eugene Shirley would not have died as a result of his consumption of the Poppy Seed Tea made from the poppy seeds. The above breaches of care by Defendants were the proximate cause of Plaintiff's death. Upon information and belief, Plaintiff relied upon the marketing of the poppy seeds by Defendants, and the lack of warnings and instructions on safe levels of consumption, when using the poppy seeds. Such reliance contributed and caused his death from the poppy seeds. Upon information and belief, Defendants knew or should have known that the poppy seeds contained dangerously high opiate levels. Defendants breached this duty,

397.    Defendants were negligent, grossly negligent, and/or reckless in the sale, supply, distribution, and marketing (i.e., inadequate warnings) of their unwashed blue poppy seeds.

398.    Each of Defendants' acts or omissions was a substantial factor in and direct, proximate, and legal cause of Todd Eugene Shirley 's death and Plaintiffs' injuries.  Todd Eugene Shirley 's death and Plaintiffs' injuries would not have occurred but for Defendants' negligence.

399.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff ingested dangerous and fatal dose(s) of opiate alkaloids from the ordinary and reasonably foreseeable consumption, use, and/or misuses of Defendants' unwashed poppy seed food products.

Plaintiff, Todd Eugene Shirley, suffered opiate intoxication, injury, and death as a direct and proximate result of consuming and/or using Defendants' unwashed poppy seed food products. Plaintiff, Todd Eugene Shirley, was caused to endure severe pain and suffering and mental anguish, lost wages and earnings and severe pecuniary loss, all to Plaintiff's great loss.

400.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 5:    MISPREPRESENTATION AND FAILURE TO DISCLOSE

401.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

402.    Defendants failed to disclose and intentionally and negligently misrepresented to Plaintiff the health risks created by the ordinary and reasonably foreseeable uses and/or misuses of Defendants' unwashed poppy seed food products.

403.    Plaintiff relied upon said representations, and Plaintiff's reliance was foreseeable to Defendants.

404.    As a direct and proximate result of Defendants' conduct, Todd Eugene Shirley consumed Defendants' unwashed poppy seed food products.  Plaintiffs were caused to suffer the injuries, expenses and losses alleged in prior counts of this complaint.

405.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 6:    DEFECTIVE DESIGN UNDER PRODUCTS LIABILITY ACT

406.    Plaintiffs reallege and incorporate the above allegations as though fully set forth

herein.

407.    Defendants are liable under a theory of strict products liability as set forth in N.J.S.A. 2A:58C-1, et seq.

408.    At all relevant times, Defendants were engaged in the business of selling, supplying, distributing, and marketing unwashed poppy seeds for use by the public via stream of interstate commerce.

409.    At all relevant times, Defendants unwashed poppy seeds were expected to and did reach Plaintiff without a substantial change in their condition (i.e., they were contaminated with opiate alkaloids).

410.    At all relevant times, Defendants' unwashed poppy seeds were defectively and improperly manufactured and designed in that, the unwashed poppy seeds were contaminated with opiate alkaloids.  In selling, supplying, distributing, an marketing these products, Defendants had full knowledge the reasonably foreseeable risks of unwashed poppy seeds and/or use of unwashed poppy seeds in making Poppy Seed Tea far outweighed the benefits associated with their design and formulation.

411.    At all relevant times, the unwashed poppy seeds that Defendants sold, supplied, distributed, and marketed were defectively manufactured and designed in that their design and formulation were more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

412.    At all relevant times, Defendants' unwashed poppy seeds created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same purpose.

413.    As a direct and proximate result of the defective design and manufacture of the

unwashed poppy seeds that Defendants sold, supplied, distributed, and marketed, Plaintiff suffered damages for which they are entitled to recovery.

414.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

### COUNT 7:    STRICT LIABILITY

415.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

416.    Defendants are strictly liable to Plaintiff by reason of the following:

(a)  Defendants were engaged in the business of being sellers, suppliers, distributors, and marketers of their unwashed poppy seed products;

(b)  Defendants knew or had reason to know that Plaintiff and other persons similarly situated would be ultimate users or consumers of their unwashed poppy seed products;

(c) Defendants knew or had reason to know that Plaintiff and other persons similarly situated would use Defendants' unwashed poppy seeds to make Poppy Seed Tea, which they would then consume;

(d) Defendants sold or otherwise placed their unwashed poppy seed products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff and other persons similarly situated;

(d)  Defendants' unwashed poppy seed products reached the users and consumers without substantial change in the condition in which they were sold (i.e., they were contaminated with opiate alkaloids);

(e)  the ordinary and foreseeable use and/or misuses of Defendants' unwashed poppy

seeds constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to consumers;

(f) Defendants' unwashed poppy seed talc products were defective in that they were incapable of being made safe for their ordinary and intended use and purpose, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the reasonably foreseeable uses and/or misuses of their unwashed poppy seeds, including making Poppy Seed tea.

417.    As a consequence of the defective condition of Defendants' unwashed poppy seeds, Plaintiff consumed Defendants' unwashed poppy seeds and/or opiate alkaloids ordinary and reasonably foreseeable use and/or misuse of those unwashed poppy seeds, thus directly and proximately resulting in Plaintiffs' injuries, expenses and losses alleged in prior counts of this complaint.

418.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 8:    CONSUMER FRAUD ACT

### (N.J.S.A. 56:8-1 *et seq*.)

419.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

420.    Defendants' unwashed poppy seeds are "merchandise" as that term is defined by the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.

421.    Defendants are persons within the meaning of the Consumer Fraud Act, N.J.S.A.

56:8-1, *et seq*.

422.    Plaintiff purchased and consumed Defendants' adulterated unwashed poppy seeds.

423.    Plaintiff used Defendants adulterated unwashed poppy seeds their intended or reasonably foreseeable use and/or misuse—human consumption—in the manner directed by and/or reasonably foreseeable to Defendants.

424.    Each of the Defendants made representations regarding processes they followed to ensure their unwashed poppy seeds sold, supplied, distributed, and marketed under safe and sanitary conditions. Defendants' representations were false.

425.    Defendants violated the Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., in the following manner:

426.    Defendants engaged in unconscionable commercial practices, through deception, fraud, and making false promises and misrepresentations, including, but not limited to, marketing and promoting these adulterated food products and Defendants' practices as safe and as otherwise providing benefits as detailed in this Complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading.

427.    Defendants used and employed deception, fraud, false pretenses, false promise, and misrepresentation in the following manner:

428.    Failing to disclose knowledge of the hazards and risks posed by consuming unwashed poppy seeds;

429.    Failing to disclose knowledge of the hazards and risks posed by the use of these adulterated food products;

430.    Failing to disclose knowledge of the hazards and risks posed by using Defendants' adulterated poppy seeds in making Poppy Seed Tea; and

431.    Downplaying and understating the health hazards and risks associated with the use of these adulterated food products.

432.    In connection with the sale, advertisement, and marketing of the adulterated food products, Defendants engaged in knowing concealment, suppression, and omission of material facts regarding the risks and hazards created by the methods used by Defendants and their suppliers, including, but not limited to, their failure to remove opiate alkaloids from their unwashed poppy seeds.

433.    The aforesaid promotion and release of the adulterated unwashed poppy seeds into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or the knowing concealment, suppression, or omission in connection with the sale or advertisement of such merchandise by Defendants in violation of the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.

434.    Defendants' actions in connection with the sale, supply, distribution, and marketing of the adulterated unwashed poppy seeds, as set forth herein, evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices in violation of the Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq*.

435.    As a result of Defendants' violation of the Consumer Fraud Act by use or employment of the methods, acts, or practices described herein, Plaintiffs have suffered ascertainable losses, in that Todd Eugene Shirley paid money to purchase Defendants' adulterated unwashed poppy seeds.

436.    As a direct and proximate result of Defendants' unconscionable commercial practices, including knowing concealment and fraudulent misrepresentations, Todd Eugene Shirley's injury and death occurred.

437.    The foregoing knowing concealment and fraudulent misrepresentations by Defendants constituted a violation of the New Jersey Consumer Fraud Act under R. 56:8-1 *et seq.*, entitling Plaintiffs to recover attorneys' fees and actual and statutory damages, and directly and proximately resulting in Plaintiffs' injuries.

438.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## Cause 9:        FRAUDULENT ASSET TRANSFER

439.    Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

440.    On or before May 3, 2019, Brachel Marketing, LLC dba Lone Goose Bakery, Brandon McCarthy, and/or Rachel McCarthy learned that: (1) a woman in Utah [Addie Kofford] died after consuming poppy seed tea, (2) a man in Georgia, Todd Shirley, died after consuming poppy seed tea, and (3) Lone Goose Bakery's unwashed Blue Bird Poppy Seeds were found at the scenes of their deaths.

441.    Seven days later, on or about May 10, 2019, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy transferred assets to the Rachel C. McCarthy Trust, including without limitation real property located at 1002 East 20th Street, Tulsa, OK, 74120.

442.    Within months, beginning on or about August 12, 2020, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy began transferring assets to Brachel Real Estate, LLC, including without limitation real property located 1609 South Boston Avenue, Tulsa, OK 74119 and commercial property located in Tula County, Oklahoma, Parcel # 25000-92-12-07910, Subdivision: MAPLE PARK ADDN, Legal: LT 4 BLK 11, Section: 12 Township: 19 Range: 12.

443. Upon information and belief, on or about October 16, 2020, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy began transferring assets to 1519 Brachel Real Estate, LLC.

444. These asset transfers are voidable under the Uniform Voidable Transactions Act, New Jersey Uniform Fraudulent Transfers Act[6], and the Oklahoma Fraudulent Transfer Act.[7]

445. At the time that Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy began transferring assets, Defendants were well aware that their Lone Goose Bakery Blue Bird Poppy Seeds had been implicated in the morphine intoxication deaths of two people, Todd Eugene Shirley in Georgia and a woman in Utah [Addie Kofford, Deceased].

446. These asset transfers were fraudulent as to Todd Eugene Shirley  and his heirs, because:

a. Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy made these transfers with actual intent to hinder, delay, or defraud Todd Eugene Shirley and his heirs; and/or

b. Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy made these transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation and Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy:

1) Were engaged or were about to engage in a business or a transaction for which the remaining assets of Defendants were unreasonably small in relation to the business or transaction, or

2) Intended to incur, or believed or reasonably should have believed that they

---

[6] N.J.S. 25:2-20, *et seq*.
[7] 24 Ok. St. §§ 112-123.

would incur, debts beyond their ability to pay as they became due.

447.   Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy's actual intent is clear from the fact that, upon information and belief:

a.  The transfers were to insiders;

b.  Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy retained possession or control of the property transferred after the transfers;

c.  Before the transfers were made, Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy were aware that they could be sued by the heirs of Todd Shirley in Georgia and the heirs of the Utah woman [Addie Kofford, Deceased] who died from morphine intoxication after drinking Poppy Seed Tea, where Lone Goose Bakery's Blue Bird Poppy Seeds were found at the scenes of their death;

d.  The transfers were of substantially all of Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy's assets;

e.  Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy removed or concealed assets;

f.  The value of the consideration received by Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy was not reasonably equivalent to the value of the assets transferred;

g.  Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy were insolvent (within the meaning of the Uniform Fraudulent Transfer Act and/or Uniform Voidable Transactions Act) or became insolvent shortly after the transfers were made;

h.  The transfers occurred shortly before or shortly after a substantial debt was

incurred; and/or

i.  Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy transferred the essential assets of the business to a lienor who transferred the assets to an insider of Defendants.

448.   These asset transfers were fraudulent as to Plaintiffs because Defendants Brachel Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy made the transfers without receiving reasonably equivalent value in exchange for the transfers and Defendants were insolvent (within the meaning of the Uniform Fraudulent Transfer Act and/or Uniform Voidable Transactions Act) at that time or they became insolvent as a result of the transfers or obligation.

449.   Defendants' acts and omissions in fraudulently transferring these assets were a substantial factor in and proximately, directly, and legally caused Plaintiffs to suffer serious injuries and damages.

450.   In response to Defendants' fraudulent asset transfers, Plaintiffs seek the following relief:

a.  Avoidance of any and all fraudulent transfers to the extent necessary to satisfy Plaintiffs' claims;

b.  An attachment or other provisional remedy against any and all assets transferred or other property of the transferees as provided for by law;

c.  An injunction against further disposition by Defendants or a transferee, or both, of any and all assets transferred or of other property;

d.  Appointment of a receiver to take charge of any and all assets transferred or of other property of the transferees;

e.  Once Plaintiffs obtain judgment on a claim or claims against Defendants Brachel

Marketing, LLC, Brandon McCarthy, and/or Rachel McCarthy, that the court levy

execution on any and all assets transferred or their proceeds;

f.   Judgment for the value of any and all assets transferred;

g.   An amount of money necessary to satisfy creditors' claims; and/or

h.   Any other relief the circumstances may require.

451.   WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

**COUNT 10:   PUNITIVE DAMAGES**
(<u>N.J.S.A.</u> 2A:15-5.9 *et seq.*)

452.   Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

453.   At all times relevant hereto, it was highly likely that serious harm would arise from Defendants' conduct as alleged above.

454.   Defendants knew or should have known that their unwashed poppy seeds would be used to make Poppy Seed Tea.  Defendants knew or should have known that people would die after consuming Poppy Seed Tea made with their unwashed poppy seeds.

455.   Upon learning that their unwashed poppy seeds would likely cause serious harm and/or death, Defendants failed and refused to take reasonable and effective corrective action.

456.   Despite their knowledge of the likelihood of serious harm, Defendants continued to sell, supply, distribute, and market their dangerous unwashed poppy seeds—including but not limited to their conduct in passing along dangerous products, the quality and safety of which Defendants took no meaningful effort to ensure—with wanton and willful disregard of persons who foreseeably might be harmed.

457.     They knew they were recklessly disregarding the likelihood that serious harm would result from their selling, supplying, distributing, and marketing unwashed poppy seeds.

458.     Plaintiff Todd Eugene Shirley suffered injury and died as a direct and proximate result of Defendants' wanton and willful disregard of consumers who would be foreseeably harmed by those acts or omissions.

459.     Defendants' fraudulent asset transfers, as described herein, directly and proximately resulted in injury to Plaintiffs.

460.     WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 11:   WRONGFUL DEATH

461.     Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

462.     This action is being brought pursuant to New Jersey's Wrongful Death Act, N.J.S.A. 2A:31-1 et seq.

463.     As a direct and proximate result of Defendants' acts and/or omissions set forth herein, Plaintiff and Plaintiff's decedent's estate have incurred pecuniary damages and hospital, medical, funeral, and estate administration expenses.

464.     Plaintiffs, Linda Sue Golden and Marion Eugene Shirley, demand judgment against Defendants for damages resulting from the death of Plaintiff's decedent, Todd Eugene Shirley, including, but not limited to, Plaintiffs' decedent's pecuniary injury, together with all hospital, medical, funeral, and estate administration expenses as specifically provided for under New Jersey's Wrongful Death Act, N.J.S.A. 2A:31-1 et seq., as well as compensatory damages, punitive

damages, costs of suit, and all other relief that the Court deems equitable and just.

465.     WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## COUNT 12:   SURVIVAL

466.     Plaintiffs reallege and incorporate the above allegations as though fully set forth herein.

467.     Plaintiff, Linda Sue Golden, on behalf of Plaintiff's decedent, Todd Eugene Shirley, seeks damages compensable under New Jersey's Survival Act, N.J.S.A. 2A:15-3 (or any successor statute) against the Defendants.

468.     Plaintiff, Linda Sue Golden, as Plaintiff's decedent's surviving mother, is entitled to recover damages as Plaintiff's decedent would have if he were living, as a result of the acts and/or omissions of Defendants as set forth herein, pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3.

469.     As a direct and proximate result of the acts and/or omissions of the Defendants as set forth herein, Plaintiff's decedent suffered injury causing his death on March 9, 2019.  Plaintiff's decedent was made to endure great pain and suffering, both physical and mental in nature.

470.     As a direct and proximate result of Defendants' acts and/or omissions set forth herein, Plaintiff's decedent's estate has incurred pecuniary damages and hospital, medical, funeral, and estate administration expenses.

471.     Plaintiff Linda Sue Golden, as the surviving mother of Plaintiff decedent Todd Shirley, as well as individual heirs of Plaintiff decedent's Estate, are entitled to recover punitive damages and damages for the pain and suffering caused to Plaintiff decedent by Defendants' acts

and/or omissions set forth herein, including, but not limited to, punitive damages pursuant to New Jersey's Survival Act, N.J.S.A. 2A:15-3.

472.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, and costs of suit as provided by law.

## VI.  PRAYER FOR RELIEF

496.    If the Court applies the substantive law of the State of Georgia, Plaintiffs plead the following Prayer for Relief 1.  Pleading in the alternative, if the Court applies the substantive law of the State of New Jersey, Plaintiffs plead the following Prayer for Relief 2.

### PRAYER FOR RELIEF 1

WHEREFORE, Plaintiffs respectfully pray as follows:

1) That the Court enter a judgment against each Defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiffs;

2) That the Court enter a judgment against each Defendant, jointly and severally, for all special damages allowable to Plaintiffs;

3) That the Court enter a judgment against each Defendant serving to award Plaintiff Linda Sue Golden, in her capacity as the duly appointed representative of the Estate of Todd Eugene Shirley punitive damages under the provisions of O.C.G.A. § 51-12-5.1 and as otherwise provided by law;

4) That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiffs under this Complaint;

5) That the costs of this action be cast upon Defendants; and

6) That the Court grants Plaintiffs such further relief which the Court deems just and proper.

## PRAYER FOR RELIEF 2

WHEREFORE, Plaintiffs respectfully pray as follows:

1) That the Court enter a judgment against Defendants jointly and severally, for all damages allowable to Plaintiffs; or in the alternative;

2) That the Court enter a judgment against each Defendants for compensatory damages;

3) That the Court enter a judgment against each Defendant, for punitive damages;

4) That the Court enter a judgment against each Defendant for costs of suit as provided by law;

5) That the Court grants Plaintiff such further relief which the Court deems just and proper.

## VII.   JURY TRIAL

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

COHEN, PLACITELLA & ROTH, P.C.
Attorneys for Plaintiffs

By:  */s/ Rachel A. Placitella*
_____
Rachel A. Placitella
For the Firm

THE LANGE LAW FIRM, PLLC
Jory D. Lange, Jr. (*Pro Hac Vice* Forthcoming)

Dated: March 4, 2021.

## CERTIFICATION

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated.  I have no knowledge at this time of any non-party who should be joined in this action.

COHEN, PLACITELLA & ROTH, P.C.
Attorneys for Plaintiffs

By:  */s/ Rachel A/. Placitella*
_____
Rachel A. Placitella
For the Firm

THE LANGE LAW FIRM, PLLC
Jory D. Lange, Jr. (*Pro Hac Vice* Forthcoming)

Dated: March 4, 2021.